# EXHIBIT 1



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
NORTHLIGHT FUND, LP

      Plaintiff,

vs.

STEWARDSHIP CREDIT ARBITRAGE FUND, LLC, STEWARDSHIP CREDIT ARBITRAGE FUND, LTD., ACORN CAPITAL GROUP, LLC, MARLON QUAN and DOES 1-100, inclusive.

      Defendants.
-----------------------------------------------------------------x

Civil Action No.

COMPLAINT

**JURY TRIAL DEMANDED**

## SUMMARY

Plaintiff Northlight Fund, LP ("Plaintiff"), hereby submits this Complaint (the "Complaint") against defendants Stewardship Credit Arbitrage Fund, LLC ("SCAF"), Stewardship Credit Arbitrage Fund, Ltd. ("SCAF Ltd."), Acorn Capital Group, LLC ("Acorn") and Marlon Quan ("Quan") ("SCAF", "SCAF Ltd.", "Acorn" and "Quan" are collectively hereinafter referred to as the "Defendants"). Plaintiff alleges the following based upon personal knowledge as to itself and its own acts, and upon information and belief as to all other matters, as follows:

## NATURE AND SUMMARY OF THE ACTION

1. This case involves securities fraud.

2. Through a series of transactions occurring in or around January 2008, Defendants engaged in a course of conduct in which they solicited a $5 million investment from Plaintiff in the form of Plaintiff's participation in a loan facility that had previously been provided by defendant Acorn to R. Esmerian, Inc.

3. Upon information and belief, Defendants solicited Plaintiff's investment by means of material misrepresentations, false statements, intentional omission of material facts and the use of certain appraisals that Defendants obtained for the express purpose of verifying the value of the collateral underlying the loan facility that Defendants knew (or should have known) were fraudulent, contained wildly inflated values of the collateral, and were otherwise designed to provide potential investors with a false belief that the loan facility was secured by items of value in excess of the loan amount.

4. As a result of Defendants' egregious and unlawful conduct, the value of Plaintiff's investment in the loan facility has been decimated, thereby causing substantial and irreparable harm to Plaintiff and its investors.

5. On the basis of the conduct of Defendants which lie at the core of this case, Plaintiff alleges violations of federal securities laws, as well as claims of fraud, breach of contract, breach of the implied covenant of good faith and fair dealing, securities fraud, negligent misrepresentation, and unjust enrichment.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over this action pursuant to § 27 of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 788 *et seq.* and § 1331 of Title 28 of the U.S. Code. The Court has jurisdiction over the common law claims alleged herein pursuant to principles of supplemental jurisdiction, 28 U.S.C. § 1367(a). In addition, the relevant contractual agreements between Plaintiff and Defendants provide that the parties shall submit to the jurisdiction of this Court for all disputes arising therefrom.

7. Venue is proper with the Court pursuant to 28 U.S.C. § 1391(b) because upon information and belief, Defendants transact business in the Southern District of New York, a

substantial part of the events giving rise to this claim, including the solicitation of Plaintiff's investment, occurred in the Southern District of New York, and all of the relevant contractual agreements between Plaintiff and Defendants provide that all disputes arising therefrom be brought before this Court.

## PARTIES

8. Plaintiff Northlight Fund, LP ("Northlight") is a limited partnership organized under the laws of the State of Delaware. Northlight GP, LLC, a Delaware limited liability company, serves as general partner of Northlight.

9. Upon information and belief, Defendant Acorn is a limited liability company organized under the laws of the State of Delaware with its principal place of business at Two Greenwich Office Park, Greenwich, Connecticut.

10. Upon information and belief, Defendant SCAF is a limited liability company organized under the laws of the State of Delaware with its principal place of business at Two Greenwich Office Park, Greenwich, Connecticut.

11. Upon information and belief, Defendant SCAF Ltd. is a Bermuda limited exempted company with its principal place of business at 7 Church Street, Hamilton, EM EX, Bermuda.

12. Upon information and belief, defendant Quan is an individual residing at 1001 5th Avenue, New York, New York.

## FACTS

The Acorn Loan to R. Esmerian, Inc.

13. Beginning in December 2003, Defendant Acorn made a series of loans to R. Esmerian, Inc. ("REI") that were purportedly secured by an inventory of certain items of jewelry and precious gems alleged to have been owned by REI.

14. On or about December 15, 2006, Defendant Acorn entered into a Loan Agreement (the "REI Loan Agreement"), pursuant to which Acorn made a loan to REI of $40 million (the "REI Loan"). A true and correct copy of the REI Loan Agreement is annexed hereto as Exhibit A. According to the REI Loan Agreement and related Security Agreement annexed hereto as Exhibit B (the "REI Security Agreement"), the REI Loan was secured by a first priority security interest in specified items of the aforementioned jewelry and precious gems (as listed in Schedule I of Exhibit B and hereinafter the "REI Loan Collateral").

15. According to the terms of the REI Loan Agreement, the REI Loan was also secured by a personal guaranty issued by Ralph Esmerian ("Esmerian").

16. Defendant Acorn obtained appraisals from third-parties A la Vielle Russie and Precious Stones with respect to the value of the REI Loan Collateral which concluded that the appraised value thereof exceeded $120 million (the "Appraisals", attached hereto as Exhibit C).

17. On or about December 12, 2007, Defendants approved the renewal of the REI Loan, initially set to reach maturity on December 15, 2007, to a renewed maturity date of March 13, 2008, with the option to further extend until December 14, 2008.

The Assignment of a Portion of the REI Loan to Plaintiff

18. On or about December 14, 2007, Defendants commenced talks with Plaintiff about Plaintiff's potential assumption of an interest in the REI Loan.

19. Defendants represented to Plaintiff that the Appraisals had been independently conducted by "highly regarded experts" in items such as those comprising the REI Collateral.

20. Defendant Quan, either directly or indirectly through his employees, attested to the reliability of the Appraisals and represented to Plaintiffs that he had a long standing relationship of trust with Esmerian.

21. On the basis of the conclusions contained in the Appraisals, as well as the representations of Defendants, Plaintiff concluded that the REI Loan was adequately secured.

22. On the basis of the representations made by Defendants to Plaintiff regarding the collateral, the reputation of Esmerian, and the investment-grade quality of the REI Loan; Plaintiff decided to proceed with the purchase of an interest in the REI Loan. Accordingly, by an Assignment Agreement dated January 15, 2008 (the "Assignment", annexed hereto as Exhibit D), Defendant SCAF transferred to Plaintiff a portion of the REI Loan in the aggregate principal amount of $5,000,000.00 for Promissory Notes ESM-5 and ESM-10 (the "Assigned Notes").

23. In exchange for the Assigned Notes, Plaintiff transferred the sum of $5,000,000.00 to Defendants.

24. In connection with the Assignment, Plaintiff entered into Agency Agreements with Defendant Acorn dated January 15, 2008 (the "Agency Agreements", annexed hereto as Exhibit E and Exhibit F). Defendant Acorn had also been servicing the REI Loan for Defendant SCAF.

25. Pursuant to the Agency Agreements, Defendant Acorn would act as "Administrative Agent" for Plaintiff and would thereby continue its role as servicer the Assigned Notes for Plaintiff. In addition to servicing, Defendant Acorn was authorized to take any action on Plaintiff's behalf in order to properly service the loan as contemplated. Furthermore, Defendant Acorn was required to notify Plaintiff of any event of default under the REI Loan Agreement as soon as it became aware of such default.

26. In February 2008, very shortly after the Plaintiff's purchase of the Assigned Notes from Defendant SCAF, REI and Esmerian went into default under the REI Loan (including the Assigned Notes) by failing to make payments when due under the REI Loan Agreement. On February 25, 2008 – a mere *month* after inducing Plaintiff to tender $5 million for a participation in the REI Loan – Defendants sent REI and Esmerian a formal Notice of Default in accordance with the REI Loan Agreement.

27. After declaring a formal event of default against REI and Esmerian under the REI Loan Agreement, and purportedly in an effort to take steps towards selling the REI Loan Collateral in satisfaction of the $40 million due to SCAF and Acorn (inclusive of Plaintiff's investment of $5 million), Acorn sought yet another independent appraisal, this time from Consultant Appraisal Services, Inc. ("CAS").

28. Remarkably, the CAS appraisal – conducted only one year after the Precious Jewels/A la Vielle Russie appraisals had been confirmed by re-appraisal – estimated the value of the REI Loan Collateral to be not more than $5,000,000 in the aggregate.

29. The CAS appraisal confirmed that the REI Loan was considerably under-secured.

30. Following their default under the REI Loan Agreement, on May 24, 2010 Plaintiff (among other parties, including Defendants) filed an Involuntary Bankruptcy Petitions pursuant to Chapter 7 of the United Bankruptcy Code against REI and Esmerian. The bankruptcy proceedings remain pending, and any substantial recovery of Plaintiff's investment in those proceedings is highly unlikely.

31. Following the filing of the bankruptcy proceedings, Plaintiff became aware of several facts that were known to Defendants at the time of Plaintiff's investment in the REI Loan. The Defendants' knowledge of these facts make it painfully apparent that Defendants

knew – or at a minimum were negligent in not knowing – that the REI Loan was at risk of imminent default, or worse yet, that the REI Loan was <u>already</u> in default at the time Defendants solicited Plaintiff's investment.

32. Specifically, in 2005 and 2006 REI obtained $177 million in loans from Merrill Lynch (the "Merrill Loans") for the financing of REI's business and the purchase of Fred Leighton LLC, a high-end jewelry retailer. Defendants knew, or should have known, that REI entered into the Merrill Loans while simultaneously entering into the REI Loan Agreement.

33. Pursuant the terms of the REI Loan Agreement, a default by REI on the Merrill Loans was considered to be a simultaneous default on the REI Loan, since a defined event of default was REI's failure to make a payment on any "material indebtedness," defined as indebtedness in excess of One Hundred Thousand Dollars ($100,000.00).

34. Defendants knew, or were negligent in not knowing, the in or around **September 2007** REI defaulted on the Merrill Loans, thereby triggering the default provisions of the REI Loan and putting REI in simultaneous default of the REI Loan.

35. Furthermore, Defendants knew, or were negligent in not knowing, that Esmerian and REI had **double pledged** the collateral previously pledged to Merrill Lynch under the Merrill Loan by **guarantying** the REI Loan with the <u>same collateral</u> (i.t., the REI Loan Collateral).

### FIRST CLAIM FOR RELIEF

**Fraud**
**(As Against All Defendants)**

36. Plaintiff hereby repeats the allegations set forth in paragraphs 1 through 33 of this Complaint as though fully set forth at length herein.

7

37. Defendants made material representations, both oral and written, with respect to numerous issues of material fact including the good standing of the REI Loan, the true value of the REI Collateral, the financial condition of REI and Esmerian, and their own evaluation of the overall quality of the investment they solicited from Plaintiff.

38. Defendants made these representations to Plaintiff at a time when they knew that the loan they were soliciting Plaintiff to acquire an interest in had been in default, or was in danger of imminent default, and Defendants withheld this material information with the intent to reduce their exposure on the REI Loan and defraud Plaintiff.

39. The representations of material fact made by Defendants induced Plaintiff to enter into the Assignment Agreement and to tender $5 million to Defendant SCAF in exchange for the loan participation in the REI Loan.

40. One or more representations of material fact made by Defendants were false and fraudulent when said representations were made.

41. Defendants knew the falsity of one or more representations of material fact made to Plaintiff when said representations were made.

42. Defendants owed a duty to Plaintiff not to make false representations of material fact.

43. Plaintiff had no reason to know of the falsity of the representations made by Defendants and reasonably relied on Defendants not to make false representations of material fact.

44. Plaintiff relied on the material misrepresentation made by Defendants in its decision to enter into and execute on the terms of the Assignment and Agency Agreement.

45. By reason of the foregoing, Plaintiff has suffered damages in excess in an amount to be determined at trial, but in no event less than $5,000,000 together with interest thereon, as well as punitive damages.

## SECOND CLAIM FOR RELIEF

### Breach of the Implied Covenant of Good Faith and Fair Dealing
### (As Against All Defendants)

46. Plaintiff hereby repeats the allegations set forth in paragraphs 1 through 43 of this Complaint as though fully set forth at length herein.

47. New York contract law imposes upon each party an obligation to act in good faith and fair dealing in the performance of a contract such that neither party shall do anything that would have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

48. As a result of the contractual relationship which existed between Defendants and Plaintiff, an implied covenant of good faith and fair dealing existed between the parties, whereby each party agreed that it would act in good faith and do nothing to deprive the other party of the benefits of the contractual agreement.

49. Defendants intentionally and willfully breached this implied covenant by acting and failing to act as alleged herein.

50. Defendants intentionally engaged in a course of conduct intended to obtain Plaintiff's investment in a loan transaction that Defendants knew was undersecured and in danger of imminent default.

51. At the time the Parties entered into the contractual agreements at issue in this case, it was known, understood, and within the reasonable contemplation of the Parties that, in the event of breach, Plaintiff would suffer injuries as a foreseeable and probable result.

9

52. As more fully described above, and by reason of all the foregoing wrongful acts and false promises, Defendants have violated the obligations of good faith and fair dealing that are implicit in every contract governed by New York Law and Plaintiff has been damaged, and continues to be damaged, in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF

### Negligent Misrepresentation
### (As Against all Defendants)

53. Plaintiff hereby repeats and realleges each and every allegation in Paragraphs 1 through 50 hereinabove as if fully set forth herein.

54. Defendants, as solicitors of securities, and Plaintiff as purchaser of such securities had a relationship of trust and confidence with Plaintiff. Defendants owed Plaintiff a duty of care when supplying Plaintiff with information.

55. Defendants carelessly and negligently supplied false information, as fully alleged above, via financial statements, inflated and fraudulent appraisals, electronic communication, and other instruments to Plaintiff, expecting and knowing that Plaintiff would rely on the information provided.

56. Defendants made misrepresentations and omissions, with the intent that Plaintiff rely on those misrepresentations and omissions, in order to induce Plaintiff to invest in the REI Loan, knowing that Plaintiff was relying on Defendants' special expertise and experience with respect to information about Esmerian and REI.

57. At the time they made those misrepresentations and omissions, Defendants knew, or were negligent in not knowing, that the REI Loan was already in default and that their statements were false, misleading and incorrect, as fully alleged above.

58. In reliance upon Defendants' recommendations and false information, and much to their detriment, Plaintiff invested $5 million in the REI Loan as herein alleged.

59. Plaintiff would not have purchased the participation in the REI Loan had it not been for the information provided by the Defendants.

60. But for Defendants' conduct, Plaintiff would not have lost any monies and Defendants were in a position to have prevented Plaintiff's loss.

61. As a result of the foregoing, Plaintiff has been damaged and is entitled to damages and other relief for the Defendants' negligent misrepresentations.

## FOURTH CLAIM FOR RELIEF

### Violation of § 10(b) of the Securities Exchange Act of 1934 and of Rule 10b-5
### (As Against all Defendants)

62. Plaintiff hereby repeats and realleges each and every allegation in Paragraphs 1 through 58 hereinabove as if fully set forth herein.

63. Defendants violated § 10(b) and Rule 10b-5 of the Securities and Exchange Act of 1934 when through the use of the mails and means and instrumentalities of interstate commerce, they fraudulently induced Plaintiffs to acquire an interest in a loan that had been in default, or was in danger of imminent default, through the use of materially false and misleading documents, financial statements, inflated and fraudulent appraisals, electronic communication, and other instruments.

64. Defendants knowingly transmitted to Plaintiffs directly and through its agents materially false and misleading statements, as more fully described above, describing and recommending the investment in the REI Loan.

65. At the time of the misstatements and omissions, Defendants knew or should have known that such statements were materially false and misleading and omitted facts required

11

to make the statements not misleading, but knowingly or recklessly made such statements to Plaintiffs in order to induce the investment.

66. Plaintiffs reasonably relied upon the information provided by Defendants recommending the purchase of the securities. At the time of such investments, Plaintiffs had no knowledge that the information and recommendations provided by Defendants contained material misstatements and omissions.

67. Plaintiffs would not have purchased the securities but for the materially false and misleading information provided by Defendants.

68. As a result of the foregoing, Plaintiff has been damaged and is entitled to damages and other relief for the Defendants' violation of § 10(b) of the Exchange Act and of Rule 10b-5.

## FIFTH CLAIM FOR RELIEF

### Rescission
### (As Against Defendant SCAF)

69. Plaintiff hereby repeats the allegations set forth in paragraphs 1 through 64 of this Complaint as though fully set forth at length herein.

70. Defendant SCAF's fraudulent misrepresentations and material concealment of facts known to them in connection with their solicitation of Plaintiff's investment in the REI Loan at a time when SCAF knew, or should have known, that the REI Loan was in default or in danger of imminent default constituted inequitable and unconscionable conduct resulting in substantial harm to Plaintiff.

71. By reason of the foregoing, equitable principals require that Plaintiff be entitled to rescission of their investment in the REI Loan by way cancellation of the Assignment and the return of Plaintiff's investment.

## SIXTH CLAIM FOR RELIEF

### Breach of the Contract
### (As Against Defendant Acorn)

72. Plaintiff hereby repeats the allegations set forth in paragraphs 1 through 67 of this Complaint as though fully set forth at length herein.

73. Pursuant to the Agency Agreements, Defendant Acorn, as Plaintiff's agent, was obligated to notify Plaintiff as soon as it became aware of an event of default on the REI Loan.

74. Defendant Acorn knew, or should have know, that the REI Loan was already in default when they induced Plaintiff to enter into the Agency Agreements.

75. By failing to notify Plaintiff of the default until approximately one month after entering into the Agency Agreements, Defendant Acorn breached its contractual obligations as Plaintiff's agent in the REI Loan.

76. As a direct and proximate result of Defendants breach of the Agency Agreements, Plaintiff has suffered damages and is entitled to damages and other relief for the Defendant Acorn's breach.

## SEVENTH CAUSE OF ACTION

### Unjust Enrichment
### (As Against Defendant SCAF)

77. Plaintiff hereby repeats and realleges each and every allegation in Paragraphs 1 through 73 hereinabove as if fully set forth herein

78. Defendants were enriched when they sold a participation interest in the REI Loan to Plaintiffs.

79. Defendants then used Plaintiff's funds to offset $5 million of the $40 million dollar loan they provided to REI when they already knew, or should have known, the loan was in default.

80. Plaintiffs not only lost control over their funds, but also lost their funds at the hands of Defendants. These circumstances dictate that, in equity and good conscience, Plaintiffs should be returned their funds.

81. As a result of the foregoing, Plaintiff has been damaged and Plaintiffs are entitled to damages and other relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment in its favor and against Defendants as follows:

A. Awarding compensatory damages to restore the Plaintiff to the position it would have been had Defendant not engaged in the wrongful conduct and to make Plaintiff "whole" again;

B. Awarding actual damages suffered by Plaintiff as a result of Defendant's breach;

C. Awarding Plaintiff all of Defendant's profits and all damages sustained by Plaintiff as a result of Defendant's wrongful acts, and such other compensatory damages as the Court determines to be fair and appropriate;

D. Awarding applicable interest, costs, disbursements and attorneys' fees;

E. Awarding Plaintiff punitive damages in connection with its claims under New York State law; and

F. Awarding Plaintiff such other and further relief as the Court deems just and proper.

DATED:   New York, New York
         November 2, 2011

                       Respectfully submitted,

                       **TAGLIAFERRO & LOPRESTI, LLP**

                       Attorneys for Plaintiff Northlight Fund, LP

          By:   _____
                       Marc X. LoPresti (SBN 292-8455)
                       Maria L. Ingravallo (SBN 479-2289)
                       45 Broadway, Suite 610
                       New York, NY 10006
                       (212) 732-4029
                       (212) 232-2398 (fax)