UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>       Plaintiff,<br>v.<br><br><br>MARLON QUAN, ACORN CAPITAL GROUP, LLC and STEWARDSHIP INVESTMENT ADVISORS, LLC,<br><br>       Defendants,<br>       and<br><br>FLORENE QUAN<br><br>       Relief Defendant | : <br>: <br>: <br>: <br>: 0:11-cv-723-ADM-JSM<br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: |

### DECLARATION OF DONALD A. RYBA IN SUPPORT OF PLAINTIFF SEC'S RESPONSE TO DEFENDANTS' MOTION FOR RELEASE OF FUNDS

I, Donald A. Ryba, declare under penalty of perjury, in accordance with 28 U.S.C. §1746, as follows:

1.   This declaration is submitted in support of Plaintiff United States Securities and Exchange Commission's ("SEC" or "Commission") Response to Defendants' Emergency Motion for Release of Funds.

2.   I am employed as a Senior Staff Accountant in the Division of Enforcement by the Chicago Regional Office ("CHRO") of the SEC, located at 175 West Jackson Boulevard, Suite 900, Chicago, Illinois 60604. I have been employed by the Commission

1

since 1994 and have held my current position since 2001. I am a licensed Certified Public Accountant in good standing in the state of Illinois. I have been a licensed Certified Public Accountant in Illinois in good standing since 1982.

3. My duties with the Commission include participating in fact-finding inquiries and investigations to determine whether the federal securities laws have been, are presently, or are about to be violated, and assisting in the Commission's litigation of securities laws violations. As part of my job, I routinely obtain bank records, trading records and other financial records typically maintained at all varieties of financial institutions, including banks, brokerage firms, and investment adviser firms, and am intimately familiar with the type of records maintained by such entities. I also interview personnel of these entities as well as other witnesses.

4. In connection with the Commission investigation captioned *Petters Co., Inc.*, C-07442 ("Petters Co.") and the related litigation, *SEC v. Quan, et al.*, I have been asked by counsel for the Commission to review and summarize certain bank records and financial transactions. Specifically, I have reviewed:

>   a) bank records of Acorn Capital Group, LLC ("Acorn") and ACGII, LLC (ACGII) which records included, but were not limited to: account opening documents, bank signatory forms, canceled checks, monthly statements, deposits, debit and credit memoranda, and wire transfer advices;
>
>   b) general ledgers and periodic financial statements for Acorn and Stewardship Credit Arbitrage Fund, LLC ("SCAF LLC");
>
>   c) documents produced to the Commission by: (i) Acorn; (ii) Marlon Quan ("Quan"); and (iii) Stewardship Investment Advisors, LLC ("Stewardship IA"); and

      d) other documents obtained and interviews and testimonies conducted by the Commission's staff ("the Staff").

5. Based upon my reviews of the materials listed in paragraph 4 above, I have prepared attached summary exhibits. The estimated count of the documents I reviewed is in excess of approximately 25,000. The summaries attached as exhibits to the declaration are fair, accurate and complete summaries of the relevant underlying records and documents I reviewed. The additional exhibits attached to this declaration are true and accurate copies of documents produced to the Commission or obtained by the Commission's staff during its investigation.

6. The documents underlying the attached summaries are voluminous but can be made available to the Court upon request and will be made available for examination and copying by the Defendants during discovery.

7. Based upon the materials listed in paragraph 4 above, I am informed and believe and, therefore, state the information set forth below:

8. Acorn and ACGII are Delaware limited liability companies. ACGII is a wholly owned subsidiary of Acorn. Quan controls Acorn and owns 82.5% of Acorn. Acorn and Stewardship IA shared office space in Greenwich, Connecticut. (Ex.1)

9. Stewardship IA is a Delaware limited liability company. Stewardship IA is owned and controlled by Quan. He owns over 90% of Stewardship IA. Stewardship IA is the managing member of SCAF, LLC. (Ex.2)

10. Stewardship IA advised three hedge funds: Bermuda-based Stewardship Credit Arbitrage Fund, LTD ("SCAF Ltd"); Connecticut-based SCAF, LLC; and

Stewardship International Fund, LTD ("SIF").

11. SCAF LLC was organized in 2001. It was one of the largest of the hedge funds managed by Quan and SIA. From 2001 through September 2008, Quan and his employees raised over $268,000,000 by selling interests in SCAF LLC to investors.

12. Almost immediately after SCAF LLC's formation, Acorn began borrowing funds from SCAF LLC through a revolving line of credit or notes payable between Acorn and SCAF LLC. (Ex.3 Page 2)

13. For example, SCAF LLC raised $6,269,825 in investor funds from inception to the end of fiscal year 2001. According to Acorn's general ledger, the balance outstanding of the "Notes Payable – Acorn" was $6,245,000 at December 31, 2001. (Ex.3 Page 2)

14. According to SCAF, LLC's audited financial statements, the loans it extended to Acorn accrued interest at annualized rates of 12% to 17%. I have summarized the interest rate disclosures. (Ex.4.)

15. A review of Acorn's general ledger indicates that the largest outstanding balance due to SCAF LLC was $55,000,000 at July 2, 2007. (Ex.5 Page 11)

16. My calculation of the average balance outstanding was $19,361,615 through the period, June 1, 2001 through October 31, 2008. The general ledger review indicates that these loans were used to fund Acorn's purchases of Petters Notes. Acorn has $14,736,170 of Petters Notes and its' subsidiary, ACGII has $30,219,421 of Petters Notes. Quan could not have purchased the Petters Notes for Acorn and ACGII without the benefit of the loans from SCAF LLC. (Ex.6)

17.  On November 13, 2007, SCAF LLC created two wholly-owned subsidiary companies, one of which was Livingston Acres ("Livingston"). Livingston was used to loan funds to Acorn which used the funds borrowed to purchase Petters Notes either for its own account or through its wholly owned subsidiary, ACGII. SCAF LLC assigned its rights and agreements under the Second Amended and Restated Loan Agreement dated January 1, 2007 by and between Acorn and SCAF LLC to Livingston. According to Livingston's Fund Portfolio Analysis, as of December 31, 2007, the line of credit had a balance of $21,320,000. (Ex.7)

18.  On October 17, 2008, bookkeepers at Acorn posted a journal entry to its general ledger reducing the amount of revolving loan due to Livingston Acres by transferring notes having a book value of $12,898,757.23 in satisfaction of the loan payable. (Ex.5 Page 12) According to the most recent ledger entries on Acorn's books, this left a balance due to SCAF LLC of $12,156,242.77 as of June 2011. (Ex.5 Page 12)

19.  At that date, any of the notes that were transferred to SCAF LLC had little or no value since this action took place after (a) the Petters raid in September 2008 and (b) Quan sued Petters for default. A corresponding entry was not booked on Livingston Acres' general ledger.

20.  As of June 2011, the outstanding balance due SCAF, LLC from Acorn was $25,055,000 (not counting the Notes transferred to SCAF LLC on October 17, 2008).

21.  On June 24, 2011, I attended Quan's deposition at the Commission's New York Regional Office. At the deposition, Quan asked questions about Acorn's outstanding debt to SCAF, LLC.

22. At the end of December 2011, a series of unexplained journal entries was posted to Livingston Acres general ledger. These journal entries had the effect of reducing the balance due from Acorn to Livingston Acres is $-0- as of December 31, 2011. (Ex. 8)

23. The unexplained journal entries posted to Livingston Acres general ledger wrote off $10,235,476.17 of the revolver loan to Acorn as realized gain /loss debt – long term. In fact, this appears to be a write off of a bad debt that Quan cannot pay. (Ex. 9)

24. On or about April 2011, Quan paid his counsel, Wilmer Hale over $1M as a retainer to represent him and his wife in the action filed by the Commission.

25. These funds came from a liquidated investment of Quan's in Hong Kong P.R.C.. The funds were wire transferred directly from the investment firm in Hong Kong to Wilmer Hale. My review of the bank records supplied by Quan did not reveal this wire transfer came from any of Quan's controlled bank accounts

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 1, 2012

DONALD A. RYBA
U.S. Securities & Exchange Commission
Chicago Regional Office
175 W. Jackson, Blvd., Suite 900
Chicago, IL 60604
(312) 353-7390