UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| U.S. Securities and Exchange Commission, )<br>)<br>Plaintiff, )<br>)<br>)<br>)<br>v. )<br>)<br>)<br>Marlon Quan, Acorn Capital )<br>Group, LLC and Stewardship )<br>Investment Advisors, LLC, )<br>)<br>Defendants, )<br>)<br>and )<br>)<br>)<br>Florene Quan, )<br>)<br>Relief Defendant, )<br>)<br>and )<br>)<br>DZ Bank AG Deutsche )<br>Zentral-Genossenschaftsbank, )<br>Frankfurt am Main )<br>Applicant Intervenor. ) | **MEMORANDUM OPINION<br>AND ORDER**<br>Civil No. 11-723 ADM/JSM |

John E. Birkenheier, Esq., and Charles J. Kerstetter, Esq., U.S. Securities and Exchange Commission, Chicago, IL, on behalf of Plaintiff U.S. Securities and Exchange Commission.

Bruce E. Coolidge, Esq., and Brian R. Michael, Esq., Wilmer Cutler Pickering Hale and Dorr LLP, Washington, D.C., and Thomas Radio, Esq., Best & Flanagan LLP, Minneapolis, MN, on behalf of Defendants Marlon Quan; Acorn Capital Group, LLC; and Stewardship Investment Advisors.

Stephen C. Carlson, Esq., and Hille R. Sheppard, Esq., Sidley Austin LLP, Chicago, IL, on behalf of Applicant Intervenor DZ Bank AG Deutsche Zentral-Genossenschaftsbank, Frankfurt am Main.

## I.  INTRODUCTION

On February 8, 2012, the undersigned United States District Judge heard oral argument on the motion [Docket No. 84] of Defendants Marlon Quan ("Quan"), Acorn Capital Group, LLC ("Acorn"), and Stewardship Investment Advisors, LLC ("SIA") (collectively, "Defendants") for the limited release of frozen funds.  Defendants seek to use the released funds to retain counsel and defend Stewardship Credit Arbitrage Fund, LLC ("SCAF") in a federal civil action filed in New York.  Plaintiff U.S. Securities and Exchange Commission ("SEC") and intervenor DZ Bank AG Deutsche Zentral-Genossenschaftsbank, Frankfurt am Main ("DZ Bank") oppose the motion.  For the reasons set forth below, Defendants' Motion is denied.

## II.  BACKGROUND

### A.     Defendants and SCAF

Quan is a Connecticut-based money manager.  Mem. Opinion & Order, May 3, 2011 [Docket No. 51] ("May 3, 2011 Order") at 3.  He owns and manages SIA, an investment advisor firm.  Id.  Acorn is also owned and managed by Quan, and is engaged in the business of making loans.  Id. at 4.  SCAF is a domestic hedge fund managed by Quan through SIA.  Id. at 3.

### B.     Investment Losses

Beginning in approximately 2001, Acorn loaned money to, among other borrowers, companies controlled by Thomas Petters (the "Petters Entities").  Acorn sold the substantial majority of the loans it originated to SCAF and to Stewardship Credit Arbitrage Fund, Ltd., a hedge fund located in Bermuda (the "Offshore Funds").

In September 2008, Petters was discovered to have orchestrated a massive Ponzi scheme of nearly $3.5 billion.  At the time Petters' Ponzi scheme collapsed, the Petters Entities had

allegedly defaulted on over $273 million in principal of loans originated by Acorn. A receiver was appointed over Petters' assets, and several of the Petters Entities filed for bankruptcy.

**C.     SEC Action, Asset Freeze**

On March 24, 2011, the SEC commenced this civil enforcement action (the "SEC Action") alleging Defendants violated federal securities laws by making false statements, misrepresentations, and material omissions to investors regarding the Petters loans. Compl. [Docket No. 1].

Contemporaneous with the filing of the Complaint, the SEC filed an expedited motion to appoint a receiver and impose an asset freeze over all Defendants and their assets. The request was prompted by the SEC's discovery that Acorn was poised to receive $14 million in settlement proceeds (the "Settlement Proceeds") from a settlement with the Petters receiver and Petters Entities' bankruptcy estates, and that Quan intended to disburse the Settlement Proceeds in a manner that would deprive SCAF's investors of a share of the funds.

The Court imposed a freeze on the Settlement Proceeds to preserve them for Quan's allegedly defrauded investors, and denied without prejudice the SEC's other requested relief. See May 3, 2011 Order at 10-16.

On July 18, 2011, the SEC stipulated to the release of the Offshore Funds' share of the frozen Settlement Proceeds to a liquidator appointed in the Offshore Funds' insolvency proceedings in a Bermuda Court. See Order, July 18, 2011 [Docket No. 62]. SCAF's share of the Settlement Proceeds remains frozen in a Court registry account (the "Registry Account"). Defendants have also agreed to deposit into the Registry Account distributions owed to SCAF from various non-Petters account debtors. Presently, the amount frozen in the Registry Account

totals approximately $18 million, an increase of $4 million from the amount frozen in March, 2011.

**D.    Additional SCAF Litigation**

In addition to its involvement in the SEC Action, SCAF has been a party in at least five civil lawsuits to recover assets or defend against claims filed by third parties. Mem. of Law in Supp. of Defs.' Mot. [Docket No. 86] at 5-7. Because Quan continues to be responsible for managing the business of SCAF, he has overseen efforts by the various law firms litigating these actions. Id. at 5-7, 10-11. The litigation has been paid for with SCAF's non-frozen funds and with funds from interested parties, including the Offshore Funds, DZ Bank, SIA, Acorn, and Quan himself. Id. at 6-7, 10-11.

In November, 2011, Quan, Acorn, the Offshore Funds, and SCAF were sued by Northlight Fund, LP ("Northlight") in federal court in New York for securities violations (the "Northlight Action"). Northlight alleges it paid $5 million to Quan, Acorn, the Offshore Funds, and SCAF in exchange for the assignment of two promissory notes owed by R. Esmerian, Inc. (the "Esmerian Notes") that had been held by SCAF. Northlight alleges the assigned Esmerian Notes went into default one month after Northlight purchased them, and that the collateral securing the notes had been overvalued and repledged to another creditor. Northlight has consented to an extension of time until February 24, 2012 for SCAF to respond to Northlight's Complaint.

**E.    Defendants' Motion**

Defendants now bring this motion requesting the limited release of frozen funds to allow SCAF to retain counsel and defend itself against the Northlight Action. Defendants argue the

release of the funds is in the best interests of SCAF investors because Northlight will otherwise obtain a default judgment against SCAF, which would diminish the pro rata amount SCAF's investors would receive on their claims and potentially give Northlight priority over SCAF's investors. Defendants contend in their unverified memorandum of law that Quan has "very few personal assets left," and that "[n]either he nor his companies can fund a defense of the claims against SCAF." Id. at 10-11. Defendants further argue there is no danger the funds would be dissipated, because the Court maintains oversight of the frozen funds and jurisdiction over Quan and his companies. Additionally, Quan argues the released funds would flow directly to counsel and he would consent to reasonable controls by the SEC over the litigation. Such proposed controls could include the SEC's approval of SCAF's counsel, of major strategical decisions, and of settlements.

      The SEC opposes Defendants' motion, arguing SCAF's investors should not be forced to pay for the defense costs of one of the entities through which Quan conducted his alleged fraud. The SEC insists: (1) the frozen funds were obtained through Quan's fraud, and thus belong to investors defrauded by Quan and to other legitimate claimants, not to SCAF itself; (2) the funds will be eroded by defending the Northlight litigation and the numerous other lawsuits that will inevitably be filed against SCAF; and (3) Quan is not the proper person to oversee the litigation against SCAF, given the serious allegations of Quan's misconduct alleged in the SEC Action. The SEC argues a receiver and stay of litigation over the frozen funds is necessary to comprehensively resolve the competing claims to the frozen funds, as opposed to determining parties' interests in a piecemeal fashion as claims are filed. The SEC is in the process of obtaining authorization to request such relief.

DZ Bank filed a motion to intervene [Docket No. 92] that was granted at the hearing. See Order Granting Mot. to Intervene, Feb. 8, 2012 [Docket No. 102]. DZ Bank argues it was the primary lender to SCAF, has funded all recovery efforts on behalf of SCAF, and is entitled to over $12 million of the frozen funds. DZ Bank states it and the Bermuda Liquidator have borne the litigation expense of recovering assets owed to SCAF and the Offshore Funds. DZ Bank urges its interest in the frozen funds will be impaired if the funds are released. DZ Bank further contends a receiver over the frozen funds is not warranted, because there is no danger they will be dissipated, and because a proper vehicle for disbursing the funds is already in place: specifically, parties seeking an interest in the funds may file a claim with this Court. DZ Bank intends to file such a claim in the near future.

## III. DISCUSSION

The purpose of an asset freeze is to preserve the status quo by preventing the assets from being dissipated or diverted. SEC v. Infinity Grp. Co., 212 F.3d 180, 197 (3d Cir. 2000). "Such relief facilitates the enforcement of any disgorgement remedy which might result from finding at trial that a violation had occurred." SEC v. Dowdell, 175 F. Supp. 2d 850, 854 (W.D. Va. 2001).

A district court has the discretion to limit or deny the payment of attorney's fees from frozen funds. FTC v. World Wide Factors, Ltd., 882 F.2d 344, 347 (9th Cir. 1989) (noting courts "regularly have frozen assets and denied attorney fees"); CFTC v. Am. Metals Exch. Corp., 991 F.2d 71, 79 (3d Cir. 1993) (stating the decision to release frozen funds to pay attorney's fees "is entrusted to the discretion of the district court"); SEC v. Private Equity Mgmt. Grp., Inc., No. CV 09-2901, 2009 WL 2058247, at *2 (C.D. Cal. July 9, 2009) ("[I]t is undisputed that [a district court] has discretion to forbid or limit payment of attorney's fees out

of frozen assets."). Decisions denying the use of frozen funds to pay attorney's fees recognize "the importance of preserving the integrity of disputed assets to ensure that such assets are not squandered by one party to the potential detriment of another." FSLIC v. Ferm, 909 F.2d 372, 374 (9th Cir. 1990).

Here, the equities weigh against releasing funds so that Quan may retain counsel for SCAF in the Northlight Action. First, given the SEC's serious allegations of fraud by Quan against his investors, Quan is not the best party to oversee SCAF's defense of the Northlight Action. Additionally, if the SEC's allegations are proven, the frozen funds will belong to defrauded investors and not to SCAF. Allowing Quan to use the funds for SCAF's defense in the Northlight action threatens to dissipate assets potentially belonging to defrauded investors.

Finally, SCAF has been using money sources other than the frozen assets to fund other litigation it has been involved in, and Defendants have not established that these other funding sources are no longer available. See Infinity Grp., 212 F.3d at 197 (denying request to pay attorney's fees from frozen assets because defendants had access to other funds that had not been frozen); Am. Metals, 991 F.2d at 79 (denying payment of attorney's fees from frozen funds because defendant had access to additional sources of money). Specifically, Defendants have not shown SCAF no longer has access to: (1) SCAF's unfrozen assets, (2) funds from Quan and his companies (whom the SEC argues owe SCAF several million dollars), and (3) resources provided by interested third parties including DZ Bank and the Bermuda Liquidator.

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion [Docket No. 84] is **DENIED**.

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  February 16, 2012.