UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

- - - - - - - - - - - - - - - - - - - - - - - - - - -

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | : : : | |
| Plaintiff, | : : | |
| v. | : : | |
| MARLON QUAN, et al., | : : | CIVIL ACTION 0:11-cv-00723-ADM-JSM |
| Defendants, | : : | |
| FLORENE QUAN, | : : | |
| Relief Defendant, and | : : : | |
| DZ BANK AG DEUTSCHE ZENTRAL-GENOSSENSCHAFTS-BANK, FRANKFURT AM MAIN, | : : : : | |
| Intervenor, | : : | |
| SOVEREIGN BANK, | : : | |
| Intervenor, and | : : : | |
| GARY HANSEN, | : : | |
| Intervenor. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - -

**SEC'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
<u>**RULE 16(b)(4) MOTION FOR EXTENSION OF DISCOVERY DEADLINES**</u>

Plaintiff U.S. Securities and Exchange Commission ("SEC") has learned within the last few weeks, from a third party, of forensic images of 30 computers. The forensic images contain at least a terabyte of ESI and possibly more. The computers from which

1

the images were made include those of Marlon Quan, his top lieutenants, and dozens of other employees of Defendants Stewardship Investment Advisors and Acorn Capital Group.  Defendants never disclosed these forensic images to the SEC.

Throughout this litigation the Defendants have consistently represented to the SEC that there existed two buckets of relevant information:  Hundreds of boxes of paper documents ("Paper Records") held in a warehouse located outside New York City and an electronic database ("Ricoh Database") that third party vendor Ricoh USA, Inc. (f/k/a "Ikon Office Solutions") ("Ricoh") created by scanning some portion of the Paper Records.

On November 16, with seven weeks left in the fact discovery period, the SEC learned *for the first time* from third party Ricoh that Ricoh had created and preserved forensic images of 30 hard drives used by Defendant Quan and other material witnesses in this case.

These forensically imaged hard drives are likely to contain critical evidence.  At a minimum they likely contain forensically retrievable data such as deleted documents, user activity logs, and metadata disclosing the documents Quan and his closest subordinates read and edited, along with the times when they read and edited those documents.  Moreover, the amount of data contained on the images (at least a terabyte) is so large as to suggest that, even accounting for duplicates, the images contain documents, spreadsheets, and other files not included in the Paper Files and Ricoh Database.

Because such voluminous and significant evidence has been uncovered near the end of fact discovery, the SEC is forced to seek a modification of the Scheduling Order to

permit the review of the forensic images and to determine whether any additional discovery is necessary based on the content of those forensic images.

## I.     FACTUAL BACKGROUND

### A.     The SEC Diligently Pursued Discovery under the Scheduling Order.

On April 24, 2012, the parties held the mandatory conference required by Fed. R. Civ. P. 26(f).  *See* Declaration of Sally J. Hewitt (hereinafter, "Hewitt Dec.") at ¶ 4.  Rule 26(f)(3) requires the discussion of "any issues about disclosure or discovery of *electronically stored information*, including the form or forms in which it should be produced (emphasis added)."  During the conference, defense counsel advised counsel for the SEC of two collections of relevant documents and ESI:  the Paper Records at the New York storage facility and the Ricoh Database.  *See* [Hewitt Dec. ¶ 4].  Defense counsel did not disclose the forensic images during the Rule 26(f) conference.  [Hewitt Dec. ¶ 5]  Nor did they disclose the forensic images in subsequent communications with counsel for the SEC.  *See* Declaration of Timothy S. Leiman (hereinafter, "Leiman Dec.") at ¶¶ 5, 7.  The Court entered its Scheduling Order on May 11, 2012.  (Dkt. 159)

On May 16, 2012 Defendants provided their Disclosures pursuant to Rule 26(a)(1).  [Hewitt Dec. Ex. A.]  The Disclosures did not reveal the forensic images.  (*Id.*)  To the contrary, in apparent reference to subpoenas the SEC issued during its investigation, the Defendants stated that they had already produced "*all known documents and tangible things* that could be located with reasonable diligence and which may be used to support the claims or defenses in this action (emphasis added)." (*Id.*)

Thus, after the Rule 26(f) Conference, subsequent discussions between counsel, and receipt of the Defendants' Rule 26(a)(1) disclosures, the SEC believed that the relevant collections of data consisted of the two things the Defendants had disclosed—the Ricoh Database and the Paper Records.

The Court's Scheduling Order directed the parties to complete fact discovery by January 1, 2013. (Dkt. No. 159)  The Order set deadlines for full expert disclosures and accompanying expert reports of January 7, 2013 for the SEC, February 1, 2013 for Defendants, and March 1, 2013 for rebuttal experts.  The SEC diligently pursued discovery.  It produced over 1,100,000 pages to Defendants in electronic format.  It issued numerous discovery requests and document subpoenas.  [Hewitt Dec. ¶ 7]  The SEC also has taken six depositions beginning in August 2012. [Hewitt Dec. ¶ 7]  The SEC has scheduled four more depositions. [Hewitt Dec. ¶ 7]  The SEC has also interviewed numerous other witnesses. [Hewitt Dec. ¶ 7]  The SEC has timely disclosed the identity of its expert witnesses, and its experts are presently working to complete their report in time for the January 7, 2013 Rule 26(a)(2)(B) full disclosure deadline.  [Hewitt Dec. ¶ 7]

In approximately June 2012, Defendants advised the SEC that they no longer had access to the Paper Records or the Ricoh Database because they had not paid the related bills.  Defense counsel asserted that the Defendants' obligation to produce these materials also ended because the Paper Records and Ricoh Database were no longer in Defendants' possession, custody or control.  (Leiman Dec. ¶¶ 6, 8.)  The parties continued discussing

this issue, but Defense counsel never disclosed the existence of the forensic images. (Leiman Dec. ¶ 9.)

On September 28, 2012, the SEC issued document requests to Defendants. Each request instructed Defendants to identify documents that were no longer within their possession, custody or control, their present or last known custodian and why they were not being produced. [Hewitt Dec. ¶ 8] Defendants' November 1, 2012 response included a general objection to each request on the grounds that "Mr. Quan no longer can afford to pay for and thus cannot access [the Paper Records or the Ricoh Database] pursuant to the prohibitions in place by the custodians of those databases and warehouses." [Hewitt Dec. ¶ 8, Ex. B] The Defendants' response made no mention of the forensic images. [Hewitt Dec. ¶ 8]

### B. The SEC Learned of the 30 Forensic Hard Drive Images from a Third Party.

Faced with Defendants' refusal to produce the Ricoh Database and Paper Records, on November 7, 2012 the SEC served Ricoh itself with a subpoena seeking production of the Ricoh Database. (Leiman Dec. ¶ 10.) Only after Ricoh's counsel responded to this subpoena did the SEC learn *for the first time* that forensic images had been made of 30 computer hard drives belonging to Acorn, Stewardship IA and their employees. (Leiman Dec. ¶ 12.) Ricoh's counsel estimated the volume of the preserved material at over 1 terabyte, amounting to millions of pages of typewritten text. (*Id.*)

SEC counsel immediately acted to evaluate the potential relevance of this evidence. Counsel asked Ricoh's counsel for a list of the custodians of each imaged hard

drive. (Leiman Dec. ¶ 13, Ex. A) Counsel also consulted with SEC's forensic information technology experts to determine the qualitative importance of forensic images. (*Id.* ¶ 17) SEC counsel also contacted counsel for the Defendants and attempted to negotiate an agreed extension of discovery. [Hewitt Dec. ¶ 9.]

### C. The Imaged Hard Drives Were Used by Critical Witnesses, Including Marlon Quan.

On November 30, 2012 Ricoh's counsel emailed the SEC a list of the imaged hard drives (Leiman Dec. ¶ 13, Ex. A.), revealing that the 30 imaged hard drives had been used by individuals already identified as critical witnesses, including: Robert Bucci (Acorn's CFO and Stewardship IA's assistant portfolio manager), Domenic Miele (Associate at Acorn with primary responsibility for Petters PAC Funding LLC account), Mark Sullivan (Acorn's VP of Operations), John Ruggerio (VP and Chief Compliance Officer for Stewardship IA), Richard Feldman (Acorn's Interim CFO) and Defendant Marlon Quan himself. (Leiman Dec. ¶ 13.) The SEC already has deposed Messrs. Sullivan and Ruggerio and has scheduled depositions for Mr. Feldman and Defendant Quan. (Leiman Dec. ¶ 14.)

### D. Forensic Images Inherently Contain Invaluable Information.

Forensic images contain abundant evidence not available from scanned images of documents. A forensic image essentially captures the contents of a hard drive exactly as they appeared when the image is taken. Thus, in addition to containing electronic documents in active files, a forensic review of hard drives could reveal extensive other material data such as:

6

- Deleted files and deletion attempts;
- Web browser history and cookies;
- User activity logs;
- Additional metadata (including metadata that could demonstrate the authorship of documents);
- Tracked changes on documents;
- Hidden files and folders;
- Files with altered extensions;
- Encrypted files;
- Hidden hard drive partitions (where someone segments the hard drive in such a way as to hide the contents of a portion of the hard drive from other users or from searches); and
- Steganography – *i.e.*, data hidden within other file types.

(Leiman Dec. ¶ 17.)

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent." "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716-17 (8th Cir. 2008) (quoting *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006)); *see also Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001);  Fed. R. Civ. P. 16(b), Advisory Committee Note (1983 Amendment) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension.").

Minnesota District Local Rule 16.3 reiterates that the moving party must establish good cause for the proposed modification and explain the proposed modification's effect on deadlines. L.R. 16.3(b).  The Rule also requires the moving party to: "(1) describe what discovery remains to be completed; (2) describe the discovery that has not been

7

completed; (3) explain why not all discovery has been completed; and (4) state how long it will take to complete discovery." L.R. 16.3(c).

### III. ARGUMENT

This Court should grant the SEC's Motion to Extend Discovery Deadlines for three reasons: (1) the SEC has acted diligently; (2) factors beyond the SEC's control delayed discovery of the new evidence; and (3) the proposed modifications to the discovery deadlines are reasonable in light of newly discovered evidence.

#### A. The SEC Has Acted Diligently.

The SEC has acted diligently in conducting discovery. Since the Court entered the Scheduling Order, the SEC has persistently pursued and completed various forms of discovery. The SEC's conduct throughout discovery satisfies the "good cause" standard of Rule 16(b)(4). By way of comparison, courts have found that less diligent parties have met the "good cause" threshold. *See, e.g., Scheidecker v. Arvig Enterprises, Inc.*, 193 F.R.D. 630, 633 (D. Minn. 2000) (the court granted a motion to amend a pleading past the deadline under Fed. R. Civ. P. 16(b), noting "we look for 'good cause,' not 'superlative cause.'"); *Archer Daniels Midland Co. v. Aon Risk Services, Inc.*, 187 F.R.D. 578, 586 (D. Minn. 1999) (extending the fact discovery deadline in part to serve the interests of justice).

More importantly, courts have found "good cause" exists when the non-moving party delays or conceals disclosure of relevant evidence within the discovery period. *See, e.g, Sandoval v. Am. Building Maintenance Indus., Inc.*, 267 F.R.D. 257, 283 (D. Minn. 2007) (finding good cause to extend fact discovery and allowing "defendants to conduct

8

discovery pertaining to a potential witness that they were made aware of only after the close of discovery."); *NordicTrack, Inc. v. Consumer Direct, Inc.*, 158 F.R.D. 415, 420 (D. Minn. 1994) (granting plaintiff's motion to extend discovery when defendants failed to disclose the identity of witnesses until the "waning hours of discovery").  Like the non-moving parties in these cases, Defendants in this case never mentioned the existence of these 30 imaged hard drives to the SEC.  Accordingly, the SEC should not be barred from conducting further discovery arising out of information revealed to it only on the eve of the fact discovery period.  *See NordicTrack, Inc.*, 158 F.R.D. at 420.

### B. Factors Beyond the SEC's Control Delayed Uncovering This Evidence.

The Defendants never notified the SEC of the existence of the forensic images, in the Rule 26(f) conference, in their Rule 26(a)(1) disclosures, in their responses to Rule 34 requests, or in other communications with SEC counsel.  The SEC repeatedly asked the Defendants about the identification and location of potentially relevant documents and ESI including any that had not been produced previously.  The Defendants consistently referred to only <u>two</u> categories of materials—the Paper Records and the Ricoh Database. The SEC thus could not tailor its discovery at the outset to cover the forensic images.

The Defendants' failure to disclose the forensic images and the SEC's efforts after first discovering the evidence demonstrate that the SEC filed this Motion in a timely manner.  *See, e.g., EEOC v. Hibbing Taconite Co.*, 266 F.R.D. 260, 266 (D. Minn. 2009) (good cause requirement of Fed. R. Civ. P. 16(b) was satisfied when defendant demonstrated, in part, the short time frame to file a motion and the efforts to file before the deadline).

### C. The Proposed Modifications for the Scheduling Order Are Reasonable Under the Circumstances.

Given the nature of forensically preserved ESI, the 30 imaged hard drives likely contain material evidence, such as deleted documents; user activity logs; and metadata, revealing what documents were read and edited, by whom, and when. However, because of the late disclosure of the forensic images and the extraordinarily large amount of ESI present on the images, the SEC cannot confirm at this time how long it will take to perform a forensic examination of the images.

Indeed, the SEC still has not secured access to the forensic images. Ricoh recently gave Defendants 3 weeks' notice of its intention to produce the forensic images and the Ricoh Database to the SEC. Counsel for the SEC understands that the Defendants have not yet indicated whether they will object to production of the images and the database. As noted above, Defendants have maintained that they no longer have possession, custody or control over the Ricoh Database (and, by logical extension, the undisclosed forensic images) because of the unpaid bills. In light of the Defendants' position, it appears that the Defendants have surrendered possession of the Ricoh Database and forensic images (and the Paper Records for that matter) to one or more third parties and therefore have lost whatever protectable interest they may have had in those materials. In any event, this question will presumably be briefed and decided if the Defendants object to production of the forensic images and the Ricoh Database.[1]

---

[1] Ricoh will incur $15,000 of expense in production of the database. The SEC is currently seeking funding to pay this expense and expects that funding will be available. If a problem develops about funding, the SEC will promptly advise the Court. In addition, the Defendants still owe Ricoh over $100,000 in connection with the creation of

10

In light of these circumstances, the SEC asks that the Court adopt a two-phase approach:

Phase One

- Complete the presently scheduled fact depositions and document productions.

- Postpone expert disclosures and discovery.

- Order that the forensic images and the Ricoh Database be produced to the SEC's IT Forensic Services branch no later than 3 weeks after entry of the Court's order on this motion.

- Order that the SEC's Forensic Services branch not disclose any contents from the forensic images or the Ricoh Database until further order of the Court.

- Order that upon receipt of the forensic images and Ricoh Database, the SEC's Forensic Services branch perform the following:

    o Complete image intake and preprocessing control items
        - Ratify chain of custody
        - Initiate evidence inventory
        - Complete evidence barcode tagging
        - Input record entries in evidence tracking database
        - Create backup and working copies of evidence drives
    o Preview and verify image type
        - Verify proper image format (e.g. E01, Raw)
        - Run hash verification to authenticate images
        - Prepare image inventory to include individual computers, volumes and custodians
    o Confer with SEC counsel to develop and establish examination scope and search criteria

---

the database.  By producing the database, Ricoh will be surrendering its leverage to obtain the payment it is owed.  The SEC expects that Ricoh may address this issue with the Court.  In any event, the SEC notes a recent deponent testified that over the next few months Marlon Quan will receive $125,000 in payment for an investment in a privately-held, Vermont-based company.  (Hewitt Dec. ¶ 10, Ex. C.)

- - o Complete forensic case initialization steps
  - o Perform necessary preprocessing steps (e.g. file hashing, signature analysis, file indexing, known file type filtering, deleted file reconstruction, image file OCR, compound file extraction and expansion)
  - o Identify and remediate encrypted file objects

Phase Two

- Order that no later than February 28, 2013 the SEC

  - o Propose a framework for performing a forensic search of the forensic images and Ricoh Database and for delivering resulting productions to the parties, including proposed steps for addressing any privilege questions as ordered by the Court, and
  - o Propose a revised schedule for completion of the case.

## **CONCLUSION**

The SEC thus requests that the Court grant its motion to extend discovery deadlines.  A proposed order has been filed contemporaneously with this Motion.

                              Respectfully submitted,

Dated: December 14, 2012           s/ John E. Birkenheier
                                          John E. Birkenheier
                                          Charles J. Kerstetter
                                          Timothy S. Leiman
                                          Sally J. Hewitt
                                          Attorneys for Plaintiff
                                          U.S. Securities and Exchange Commission
                                          Chicago Regional Office
                                          175 West Jackson Blvd.
                                          Suite 900
                                          Chicago, Illinois 60604
                                          T. 312-353-7390
                                          F. 312-353-7398
                                          BirkenheierJ@sec.gov
                                          KerstetterC@sec.gov
                                          LeimanT@sec.gov
                                          HewittS@sec.gov

              James Alexander
              Assistant United States Attorney
              District of Minnesota
              600 U.S. Courthouse
              300 South Fourth Street
              Minneapolis, MN
              T. 612-664-5600
              F. 612-664-5788
              Local Counsel