UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

------------------------------- x
UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,

      Plaintiff,

v.

MARLON QUAN, et al.,

      Defendants,

FLORENE QUAN,

      Relief Defendant,

and

DZ BANK AG DEUTSCHE ZENTRAL-
GENOSSENSCHAFTSBANK,
FRANKFURT AM MAIN ("DZ
BANK"), and SOVEREIGN BANK,

      Intervenors.

------------------------------- x

CIVIL ACTION
0:11-cv-00723-ADM-JSM

**INDEX OF EXHIBTS TO PLAINTIFF SEC's MEMORANDUM IN RESPONSE TO THE "PREFERRED INVESTORS'" MOTION TO <u>INTERVENE AND MODIFY ORDER APPOINTING RECEIVER</u>**

| Exhibit | Description |
|---|---|
| A | Memorandum Opinion in *SEC v. Mut. Benefits Grp.*, 04-60573-CIV-MORENO, Dkt. #2188 (S.D. Fla. Oct. 23, 2008). |
| B | Excerpt from August 8, 2012 Deposition Testimony of Sandeep Srinath in this case. |

# Exhibit A

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 04-60573-CIV-MORENO**

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,

vs.

MUTUAL BENEFITS CORP., *et al.*,

    Defendants,

VIATICAL BENEFACTORS, LLC, *et al.*,

    Relief Defendants,
_____/

### ORDER GRANTING RECEIVER'S MOTION FOR FINAL DETERMINATION OF ALLOWED CLAIMS

THIS CAUSE came before the Court upon Receiver's Final Omnibus Report on Claims and Motion for Final Determination of Allowed Claims **(D.E. No. 2172)**, filed on **October 14, 2008**.

THE COURT has considered the motion, the oral argument of the parties, and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motion is **GRANTED** as follows.

**I.**  **Applicable Basis for Investors' Claims**

The Court adopts the Receiver's position regarding the applicable basis for the investors' claims. The Receiver shall use the initial dollar amount invested with MBC as the basis for the allowed amount of each investor's claim (the "dollars invested" approach) as it is the most equitable and practical basis for determining investors' claims in this Receivership. It is also the most common and most generally recognized approach to treatment of investor claims in an equitable receivership or bankruptcy proceeding involving a fraudulent investment scheme.

II.  **Disputed Claims and Miscellaneous Issues**

The Court adopts the Receiver's position regarding the disputed claims and miscellaneous issues as the Receiver's recommendations are in the best interest of the investors and will result in the equitable distribution of the receivership estate. Specifically, the Court finds as follows.

(1)  Claims for Investment Return

These are claims where the investors have sought the amount they expected to earn on their investment with MBC (in addition to the amount invested). These claims are disallowed as the promised returns were the product of fraud and claims for "profits" in Ponzi-scheme receiverships are generally rejected by the courts.

(2)  Claims for Delay/Interest/Lost Time Value of Money

These are claims where the investors have sought damages for the delay in their policies maturing "on time" in the form of interest or some other form of opportunity cost. These claims are disallowed as it would be inequitable and contrary to the case law to recognize claims based upon the fraudulent representations made in a Ponzi-scheme. Moreover, even if the business of MBC had been conducted lawfully, the investors had no guarantee that an investment in a policy would mature at the time projected in the life expectancy estimate.

(3)  Claims for Premiums Paid and/or Administrative Fees Paid

These are claims where the "Keeping Investors" have sought to recover the administrative fees and/or premiums paid to keep their policies in force since the disposition process for all of the policies was concluded. These claims are disallowed as the "Keeping Investors" specifically agreed to take on the administrative expense and shared premium burden for their policies when they opted to attempt to mitigate their losses by voting to keep their policies.

(4)     Claims are Unstated or Unexplained or Non-Responsive

These are claims where the investors indicated that they did not agree with the recommended claim amount, but did not explain why or indicate the additional amount sought. These claims are disallowed as there is no practical way to give these investors an additional amount without a description of what additional amount is claimed.

(5)     Claims for Consequential Damages

These are claims where the investors have sought some form of consequential damages as a result of their investment with MBC (e.g. payments to an attorney or other professional, pain and suffering). These claims are disallowed as recognizing them would be impractical (as the existence and amount of the claims are difficult to verify) and inequitable (as investors made different personal choices).

(6)     Claims from Trade Creditors

Six of the trade creditors responded to the Receiver's notice by indicating that they wished to preserve their claims despite the Receiver's objections. The creditors' claims shall be subordinated to the individual investors' claims because, among other things, (1) this is an SEC enforcement action designed to protect the *investors,* not the creditors, (2) MBC's fraudulent conduct was directed towards its *investors*, not its creditors (which were paid substantial amounts already), (3) the investors as a whole are less able to bear the financial costs of MBC's conduct than are the creditors, and (4) four of these creditors provided lobbying or legal services to MBC, helping to keep it in business, thereby prolonging the fraud. The Court also disallows (1) Holland & Knight's Claim No. 3049061 to the extent it relates to work that was performed post-Receivership, (2) Aaron Reed & Associates, LLC's Claim No. 3048058 to the extent it includes a retainer fee for the month of April 2004, and (3) Franklin Trade Graphics's Claim No. 3048110 to the extent it includes post-Receivership finance charges.

(7) <u>On-Going Maturities</u>

Additional policies will inevitably mature between this ruling and actual receivership estate distribution. In order to prevent an investor from receiving the death benefits on their investment *and* their *pro rata* share of the receivership estate distribution, any claims on policies that mature before the distribution date shall be disallowed (as the investor will already receive the death benefits on the policy).

(8) <u>Estate of Sally G. Richardson</u>

This investor signed an irrevocable offer to sell her policy interest to another investor on her policy. By error, the death benefit proceeds were sent to Mrs. Richardson, instead of to the investor who bought her interest in the policy. The Receiver notified Mrs. Richardson of the error, but she has not responded. Instead, she has submitted claims on five other policies through the Claims Process. These claims are denied and any amount she would have received shall be transferred to the investor who should have received the death benefit proceeds on the sold policy. (Any amount that may be transferred to the investor shall not exceed the amount that the investor should have received from the sold policy.)

DONE AND ORDERED in Chambers at Miami, Florida, this 22nd day of October, 2008.

/s/ Federico A. Moreno

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:
Counsel of Record

# Exhibit

# B

Page 1

```
 1   UNITED STATES DISTRICT COURT
     DISTRICT OF MINNESOTA
 2   Case No. 11-CV-723-ADM-JSM
     ----------------------------------x
 3   UNITED STATES SECURITIES AND EXCHANGE
     COMMISSION,
 4            Plaintiff,
 5
        - against -
 6
 7   MARLON QUAN, ACORN CAPITAL GROUP, LLC,
     STEWARDSHIP INVESTMENT ADVISORS, LLC,
 8   STEWARDSHIP CREDIT ARBITRAGE FUND, LLC,
     PUTNAM GREEN, LLC, LIVINGSTON ACRES, LLC,
 9   and ACG II, LLC,
              Defendants.
10
11   FLORENE QUAN,
              Relief Defendant,
12
13      - and -
14   DZ BANK, AG DEUTSCHE
     ZENTRAL-GENOSSENSCHAFTSBANK,
15   FRANKFURT AM MAIN ("DZ BANK"),
16            Intervenor.
17   ----------------------------------x
                 August 8, 2012
18               9:47 a.m.
19
20
     DEPOSITION OF SANDEEP SRINATH
21
22
23
24
```

Page 2

1
2
3
4        Deposition of SANDEEP SRINATH, taken
5   by Plaintiff, pursuant to Subpoena, held
6   at the offices of the United States
7   Securities and Exchange Commission, 3
8   World Financial Center, New York, New
9   York, before Todd DeSimone, a Registered
10  Professional Reporter and Notary Public of
11  the State of New York.
12
13
14
15
16
17
18
19
20
21
22
23
24

Page 150

1  to do anything?
2      A.      Again, I don't remember the
3  exact conversation, but I think it was
4  already done, the participation note was
5  already final.  It is what it is.  There
6  is a contradiction between two sets of
7  documents and we just have to live with
8  it.
9      Q.      In response to your e-mail, the
10 first e-mail in the chain on the first
11 page, you received an e-mail from Cecil
12 Smart.  The final sentence of the e-mail
13 reads "Getting into a confrontation or
14 defending our point with someone who
15 clearly has suspect ethics won't
16 accomplish anything."
17         Did you have any conversations
18 with Mr. Smart about what he meant by
19 suspect ethics?
20     A.      I can't recall having a
21 conversation with Cecil to clarify that
22 comment, no.
23     Q.      And whether in the context of
24 this e-mail or not did you have any

Page 151

1  conversations with Cecil Smart about
2  Marlon Quan's ethics?
3      A.    I don't think so.
4      Q.    During the existence of the
5  credit facilities to the SCAF SPVs, do you
6  have any concerns about whether Mr. Quan
7  had misrepresented any transaction to you?
8      A.    No, I did not have any concerns
9  to my recollection.
10     Q.    And do you feel that you
11 received prompt information about the
12 underlying transactions from Acorn and the
13 Stewardship entities?
14     A.    I believe so, yes.
15     Q.    Do you have any knowledge about
16 whether the investors in SCAF were
17 informed about the details of the credit
18 facility between DZ Bank and the
19 Stewardship entities?
20           MR. COOLIDGE:  Objection.
21     A.    I don't have any knowledge, no.
22     Q.    Do you have any knowledge about
23 whether the investors in SCAF were given
24 any information about DZ Bank's security