# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br>          Plaintiff,<br><br>     v.<br><br>MARLON QUAN; ACORN CAPITAL GROUP, LLC; STEWARDSHIP INVESTMENT ADVISORS, LLC;  STEWARDSHIP CREDIT ARBITRAGE FUND, LLC; PUTNAM GREEN, LLC; LIVINGSTON ACRES, LLC; and ACG II, LLC,<br><br>          Defendants,<br><br>FLORENE QUAN,<br>          Relief Defendant,<br><br>NIGEL CHATTERJEE; DZ BANK AG DEUTSCHE ZENTRAL-GENOSSENSCHAFTSBANK, FRANKFURT AM MAIN and SOVEREIGN BANK,<br><br>          Intervenors,<br><br>GARY HANSEN,<br>          Receiver. | Civil No. 11-723 ADM/JSM |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO (1) INTERVENE AND (2) MODIFY ORDER APPOINTING RECEIVER**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ............................................................................................................................ 3

    I.    Frozen Funds Are Not Ill-Gotten
        Profits And Thus Cannot Be Disgorged ............................................................... 3

    II.   Neither The SEC Nor The Receiver Have
        Discretion Over How To Disburse The Frozen Funds ........................................ 7

    III.  The Claims Process
        Should Commence Immediately ......................................................................... 8

CONCLUSION ........................................................................................................................ 9

**TABLE OF AUTHORITIES**

**CASES**          **PAGE(s)**

Fletcher International, Ltd. v. ION Geophysical Corp.,
    No. 5109-VCS, 2010 Del. Ch. LEXIS 125 (Del. Ch. May 28, 2011) .................. 7, 8

Official Committee of Unsecured Creditors of WorldCom, Inc. v. S.E.C.,
    467 F.3d 73 (2d Cir. 2006) ....................................................................................... 4

S.E.C. v. Cioffi,
    868 F. Supp. 2d 65 (E.D.N.Y. 2012) ................................................................... 4, 5

S.E.C. v. Fischbach Corp.,
    133 F.3d 170 (2d Cir. 1997) ..................................................................................... 4

S.E.C. v. Kapur,
    No. 11 Civ. 8094 (PAE), 2012 U.S. Dist. LEXIS 169784
    (S.D.N.Y. Nov. 29, 2012) ..................................................................................... 5, 6

S.E.C. v. Lawton,
    Civ. No. 09-368 ADM/AJB, 2011 U.S. Dist. LEXIS 11865
    (D. Minn. Feb. 7, 2011) ....................................................................................... 4, 5

S.E.C. v. O'Hagan,
    901 F. Supp. 1461 (D. Minn. 1995) ......................................................................... 4

Intervenors Topwater Exclusive Fund III, LLC ("Topwater"), Freestone Low Volatility Partners, LP ("Freestone LVP"), and Freestone Low Volatility Qualified Partners LP ("Freestone LVQP" and together with Topwater, the "Preferred Investors") respectfully submit this reply memorandum of law in further support of their motion to modify the Court's Order appointing a receiver dated April 30, 2012 [Docket. No. 149] to permit the Receiver to immediately commence a claims process and propose a plan of distribution.[1]

## PRELIMINARY STATEMENT

There are approximately $18 million – the so-called "Frozen Funds" – waiting to be distributed to SCAF's[2] investors.  Under the April 30, 2012 Order, the Receiver believes he cannot distribute the Frozen Funds until after entry of any order of disgorgement of funds.  (Receiver Order at Para. XVII.)  As the SEC has plainly conceded, that effectively means that SCAF's investors (the very same parties whom the SEC is tasked with protecting) could potentially wait **years** to receive their respective portions of the Frozen Funds.  The SEC, however, cannot disgorge the Frozen Funds and thus the Receiver Order should be modified to allow the Receiver to immediately commence a claims process to determine how to distribute the Frozen Funds.

The seminal issue to be decided in connection with this Motion is whether the Frozen Funds represent ill-gotten gains that can be disgorged from SCAF.  The SEC's

---

[1] Neither the SEC nor the Receiver opposed the Preferred Investors' motion to intervene in this action.

[2] Unless otherwise defined herein, all defined terms used herein shall have the meanings ascribed to such terms in the Memorandum of Law in Support of the Preferred Investors' Motion to (1) Intervene and (2) Modify Order Appointing Receiver [Dkt. #222].

complaint describes in detail the allegedly fraudulent misrepresentations made by Marlon Quan through his investment advisor, SIA, and the more than $46 million in management and incentive fees that SIA received from SCAF's investors (of which Quan personally derived approximately $33 million).  Over a year after the SEC filed its initial complaint whereby it sought to disgorge the aforementioned ill-gotten profits from SIA and Quan, the SEC amended its complaint to add SCAF as a defendant, ostensibly in a desperate attempt to also disgorge the Frozen Funds.

As discussed further below, the SEC only has the authority to disgorge ill-gotten profits.  In the hedge fund context, it is indisputable that the ill-gotten profits constitute the management and incentive fees that the investment advisor (here SIA and Quan) wrongfully obtained from SCAF.  The SEC, from the inception of this civil enforcement action, has sought to disgorge those funds from Quan and SIA.  It makes perfect sense that the SEC is seeking to do so because to the extent Quan committed fraud, he did so solely through his investment advisor, SIA.  Per the explicit terms of SCAF's PPM and LLC Agreement: **SIA is the "Managing Member" of SCAF and "will make all investment and trading decisions on behalf of [SCAF] under the direction of Mr. Marlon Quan, its sole member."** See Class P PPM at 1; see also LLC Agreement at 1.[3]  Indeed, it is standard hedge fund practice that the investment advisor is the entity that makes all investment decisions on behalf of the funds it manages; not the fund itself.

---

[3] SCAF's Class P Confidential Private Placement Memorandum is attached as Exhibit C to the February 7, 2013 Declaration of Jonathan T. Shepard; SCAF's Amended and Restated LLC Agreement is attached as Exhibit A to the Shepard Declaration.

Thus, if Quan engaged in fraudulent activities, he unquestionably committed such actions through his investment advisor SIA, <u>not</u> through SCAF as the SEC contends.

On the other hand, the SEC's attempt to disgorge the Frozen Funds is dubious. It is well established under applicable case authorities, one of which − <u>S.E.C. v. Lawton</u> − was decided by this Court, that the Frozen Funds are not ill-gotten profits subject to disgorgement. Instead, they are fund assets derived through the ordinary liquidation of tangible Petters assets and non-Petters investments. As such, the SEC does not have the authority, whether under the operative fund documents, the applicable case precedents or industry practice, to disgorge these funds.

Accordingly, the Preferred Investors respectfully request that the Court modify its April 30, 2012 Order to permit the Receiver to immediately commence the claims process and propose a plan of distribution for the Frozen Funds. SCAF's investors surely should not have to wait any longer (it has already been nearly a year since the Receiver has been appointed) to even commence a process by which they can receive their money.

## **ARGUMENT**

**I.     Frozen Funds Are Not Ill-Gotten
        Profits And Thus Cannot Be Disgorged**

The critical issue is whether the Frozen Funds could potentially constitute ill-gotten profits that are subject to disgorgement. The Receiver does not attempt to answer this question, instead focusing his brief on the discretion he would obtain if the SEC is successful in its civil enforcement action. The SEC claims that because it amended its complaint more than a year after filing its initial complaint to add SCAF as a defendant and because it merely alleges in its amended complaint that Quan defrauded investors

3

through SCAF, that the Frozen Funds somehow represent ill-gotten profits. (SEC Br. at 4-5.) But the mere fact that Quan purportedly defrauded investors through SCAF does not mean that the Frozen Funds constitute ill-gotten profits. Tellingly, the SEC does not even attempt to explain how the Frozen Funds could possibly be construed to be ill-gotten profits. As shown below, the SEC does not have the authority to disgorge these funds.

Disgorgement is a remedial measure, aimed at preventing unjust enrichment as the result of a defendant's wrongdoing. S.E.C. v. Lawton, Civ. No. 09-368 ADM/AJB, 2011 U.S. Dist. LEXIS 11865, at *8 (D. Minn. Feb. 7, 2011); S.E.C. v. O'Hagan, 901 F. Supp. 1461, 1468 (D. Minn. 1995). "[T]he primary purpose of disgorgement orders is to deter violations of the securities laws by **depriving violators of their ill-gotten gains**." S.E.C. v. Fischbach Corp., 133 F.3d 170, 175 (2d Cir. 1997) (emphasis added). Moreover, compensation of victims is a "distinctly secondary goal." Id.

Importantly, disgorgement is measured by the defendant's gains and not by the victims' losses. See S.E.C. v. Cioffi, 868 F. Supp. 2d 65, 70 (E.D.N.Y. 2012). Indeed, "the size of a disgorgement order 'need not be tied to the losses suffered by defrauded investors.'" Official Comm. of Unsecured Creditors of WorldCom, Inc. v. S.E.C., 467 F. 3d 73, 81 (2d Cir. 2006) (quoting Fischbach Corp., 133 F.3d at 175-76)).

In the hedge fund context, it is well established that courts disgorge an investment advisor's fees, rather than the fund's assets, because such fees represent ill-gotten profits of the fraud. A case decided by this Court − S.E.C. v. Lawton − is instructive. There, Lawton managed a hedge fund, Paramount Partners, L.P., through his investment

advisory firm, Crossroad Capital Management, LLC.  2011 U.S. Dist. LEXIS 11865, at *1.  Lawton and Crossroad received compensation through annual management and performance fees.  Id. at *2.  The SEC commenced a civil action against Lawton, Crossroad *and* the hedge fund Paramount alleging securities violations arising from Lawton's fraudulent overstatement of Paramount's performance.  Id.  This Court held that Lawton's ill-gotten gains were the amount of **profits that he received from his management of the Funds.**  Id. at *10-13.  This Court ordered that Lawton and Crossroads pay disgorgement of approximately $4 million, which specifically represented the management and performance fees that they collected from Paramount's investors.  Id.  This Court did not order the disgorgement of Paramount's assets .

Similarly, in S.E.C. v. Cioffi, two hedge fund managers at Bear Stearns were responsible for $1.6 billion in losses suffered by two Bear Sterns hedge funds.  868 F. Supp. 2d at 66.  The SEC commenced a civil enforcement action against the two hedge fund managers alleging that they misrepresented to investors the health of the funds when they knew that the funds "were on their last legs."  Id.  The court approved a settlement whereby the SEC agreed that the managers must disgorge only the actual profits that were retained by the two managers – which totaled approximately $1 million – rather than the $1.6 billion in investor losses.  Id. at 72.  In approving the settlement, the court reiterated that disgorgement is confined to the "defendant's gains, and not by victims' losses."  Id. at 70.  Moreover, the court ultimately concluded that it felt "constrained to accept the settlement" because of "the limited powers that Congress has afforded the SEC to recoup investor losses . . ."  Id. at 66; see also S.E.C. v. Kapur, No. 11 Civ. 8094

5

(PAE), 2012 U.S. Dist. LEXIS 169784, at *8-15 (S.D.N.Y. Nov. 29, 2012) (court disgorged the investment advisor's management and incentive fees, holding that those were the ill-gotten profits causally connected to the fraudulent activity).

Here, the SEC, contrary to the above-noted case authorities, is wrongfully attempting to enlarge its powers by attempting to recoup SCAF's investors' losses. To the extent Quan committed fraud, he did so solely through his investment advisor, SIA. As clearly set forth SCAF's PPM and LLC Agreement: **SIA is the "Managing Member" of SCAF and is vested with full authority to "make all investment and trading decisions on behalf of [SCAF] under the direction of Mr. Marlon Quan, its sole member."** See Class P PPM at 1; see also LLC Agreement at 1. Therefore, if Quan engaged in fraudulent activities, he indisputably committed such actions through his investment advisor SIA, and not through SCAF as the SEC claims. Furthermore, all of the fund documents noted in the SEC's brief, such as marketing materials and letters to investors, which allegedly contain the fraudulent statements made by Quan, confirm this fact because those materials were issued to the investors by SIA. See LLC Agreement; Class P PPM; January 2009 and August 2011 letters.[4]

Thus, if the SEC prevails in its action, it may disgorge Quan's and SIA's ill-gotten profits. The SEC, in its Amended Complaint, actually identifies those profits: SIA charged SCAF a monthly management fee of approximately 1% per year of the Fund's net asset value and a quarterly performance fee of approximately 20% of the increase in the Funds' net asset value. (Amended Compl. ¶ 66.) According to the SEC, from 2001

---

[4] These documents are annexed as Exhibits A, C, D, and E, respectively, to the Shepard Declaration.

to 2008, SIA received more than $46 million in management and performance fees from the Funds, of which Quan personally received approximately $33 million.  (Id. ¶ 67.) Those fees unquestionably constitute the Defendants' ill-gotten profits.

Yet, the SEC is arguing that the Frozen Funds constitute ill-gotten profits merely because Quan purportedly committed his fraud through SCAF.  (SEC Br. at 4-5.)  But the SEC's argument is in direct contravention to the operative fund documents, which indisputably state that Quan made <u>all</u> investment decisions through SIA (<u>not</u> SCAF). Furthermore, the Frozen Funds are comprised of monies derived from the liquidation of tangible assets that belong exclusively to SCAF or from SCAF's non-Petters investments, none of which can be labeled as profits (as SCAF certainly did not derive any profits) illegally obtained by the fund.  Accordingly, the SEC does not have the authority, whether pursuant to applicable case precedents, the operative fund documents or industry practice, to disgorge the Frozen Funds.

## II. Neither The SEC Nor The Receiver Have Discretion Over How To Disburse The Frozen Funds

Both the SEC and the Receiver argue that the Court must wait to disburse the Frozen Funds because if those Funds are disgorged, the SEC and the Receiver will be conferred with broad discretion to propose a "fair and equitable" distribution plan.  (SEC Brief at 6-9; Receiver Brief at 3-4.)  This purportedly means, according to the SEC and the Receiver, that they need not adhere to the priorities set forth in the SCAF contractual documents, even though each and every sophisticated and well-informed investor reviewed and executed those documents.  (Id.)  However, this alleged power contravenes well-established principles of contract interpretation.  See  Fletcher Int'l, Ltd. v. ION

7

Geophysical Corp., No. 5109-VCS, 2010 Del. Ch. LEXIS 125, at *11 (Del. Ch. May 28, 2011) ("A preferred stockholder's rights are primarily contractual in nature, and the 'construction of preferred stock provisions are matters of contract interpretation for the courts.'") (citations omitted).

In any event, the SEC's and the Receiver's arguments wrongly presume that the Frozen Funds are ill-gotten gains subject to disgorgement. As stated above, they are not. Thus, while the Preferred Investors disagree with the SEC's and the Receiver's analysis of their powers over disgorged assets, that issue is irrelevant to the disbursement of the Frozen Funds. As the SEC plainly concedes, if the Frozen Funds are not ill-gotten profits, then "the investors' rights to SCAF's assets likely would be determined by their position as equity stakeholders and by SCAF's agreements." (SEC Brief at 5.) That determination should be immediately contemplated by the Receiver through the claims process.

### III. The Claims Process Should Commence Immediately

Finally, the SEC claims that the Preferred Investors seek an immediate distribution of their preferred interests in SCAF. (SEC Brief. at 3-4.) The SEC wrongly characterizes the relief sought in this Motion. The Preferred Investors are not asking the Court to order the immediate disbursement of the Frozen Funds. Rather, the Preferred Investors are merely requesting that the Court order the Receiver to immediately submit a proposal for a claims process and distribution plan for the Frozen Funds without waiting for entry of any order of disgorgement. During that claims process, **all** interested parties will be

8

given the opportunity to advocate for their respective portion of the Frozen Funds. There is simply no conceivable reason to delay that process any longer.[5]

## CONCLUSION

For the foregoing reasons, the Preferred Investors respectfully request that the Court enter an order (1) permitting the Preferred Investors to intervene in this action; (2) modifying the Receiver Order to immediately authorize the Receiver to submit a proposal for a claims process and distribution plan for the Frozen Funds without waiting for entry of any order of disgorgement; (3) setting an expedited schedule for the Receiver to submit his proposed claims process and distribution plan and all interested parties to submit responses thereto; and (4) such other and further relief as the Court deems just and proper.

---

[5] While conceding that the majority of the cases involving SCAF have been resolved, the Receiver asserts that three cases remain. (Receiver Br. at 2-3, fn 2.) That statement is not accurate. In fact, Northlight Fund LP v. Stewardship Credit Arbitrage Fund, LLC, et al., Civ. No. 11-7840 (S.D.N.Y.) was voluntarily dismissed by plaintiff and So Ordered by the court on January 9, 2013. In addition, Stewardship Credit Arbitrage Fund, LLC, et al. v. Hoberman, Miller, Goldstein, & Lesser, P.C., Index No. 651901/2011 (N.Y. Sup. Ct.) is a minor action against a law firm concerning a non-Petters investment in which SCAF seeks a recovery of only approximately $167,000 and Poptech, L.P. v. Stewardship Investment Advisors, LLC, et al., Civ. No. 3:10-cv-967 (D. Conn) is a derivative action on behalf of all SCAF investors against, among others, SIA, Quan, Acorn Capital Group, which is based on many of the same allegations and causes of actions as those set forth in this action. All that said, if any additional assets are actually collected into the Receivership Estate, they can easily be distributed in accordance with the distribution plan adopted by the Court, and thus should not serve to delay the commencement of a claims and distribution process in any manner.

Dated:  March 14, 2013

          WARNER LAW, LLC


          By:    s/George E. Warner, Jr.
                George E. Warner, Jr. (#0222719)

          120 South Sixth Street
          Minneapolis, MN 55402-1817
          (952) 922-7700
          george@warnerlawmn.com

          PRYOR CASHMAN LLP
          Jonathan T. Shepard (NY 4057337)
          Robert M. Fleischer (NY 2528172)
          Eric M. Fishman (NY 4401113)
          7 Times Square
          New York, New York 10036-6569
          (212) 421-4100

          *Attorneys for Intervenors Topwater Exclusive Fund III, LLC; Freestone Low Volatility Partners, LP; and Freestone Low Volatility Qualified Partners, LP*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

|  |  |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br>                Plaintiff,<br><br>               v.<br><br>MARLON QUAN; ACORN CAPITAL GROUP, LLC; STEWARDSHIP INVESTMENT ADVISORS, LLC; STEWARDSHIP CREDIT ARBITRAGE FUND, LLC; PUTNAM GREEN, LLC; LIVINGSTON ACRES, LLC; and ACG II, LLC,<br><br>               Defendants,<br><br>FLORENE QUAN,<br>               Relief Defendant,<br><br>NIGEL CHATTERJEE; DZ BANK AG DEUTSCHE ZENTRAL-GENOSSENSCHAFTSBANK, FRANKFURT AM MAIN and SOVEREIGN BANK,<br><br>               Intervenors,<br><br>GARY HANSEN,<br>               Receiver. | Civil No. 11-723 ADM/JSM<br><br>CERTIFICATE OF COMPLIANCE WITH LOCAL RULES 7.1(d) AND (f) |

      Counsel for Intervenors Topwater Exclusive Fund III, LLC, Freestone Low Volatility Partners, LP, and Freestone Law Volatility Qualified Partners LP certifies that the Reply Memorandum of Law In Further Support Of Motion To (1) Intervene and (2) Modify Order Appoint Receiver contains 2944 words and therefore complies with the Court's March 4, 2013 Order. The number of words was calculated using the word count function of Microsoft Word 2007, the work processing program used to prepare the

Memorandum, and includes headings, footnotes and quotations.  Intervenors' Memorandum uses size 13 font type in compliance with Local Rule 7.1(h).

Dated:  March 14, 2013

          WARNER LAW, LLC

          By:  s/George E. Warner, Jr.
               George E. Warner, Jr. (#0222719)

          120 South Sixth Street
          Minneapolis, MN 55402-1817
          (952) 922-7700
          george@warnerlawmn.com

          PRYOR CASHMAN LLP
          Jonathan T. Shepard (NY 4057337)
          Robert M. Fleischer (NY 2528172)
          Eric M. Fishman (NY 4401113)
          7 Times Square
          New York, New York 10036-6569
          (212) 421-4100

          *Attorneys for Intervenors Topwater Exclusive Fund III, LLC; Freestone Low Volatility Partners, LP; and Freestone Low Volatility Qualified Partners, LP*