# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| U.S. Securities and Exchange Commission,  )  | |
| )  | |
| Plaintiff,  )  | |
| v.  )  | **MEMORANDUM OPINION** |
| )  | **AND ORDER** |
| Marlon Quan; Acorn Capital  )  | Civil No. 11-723 ADM/JSM |
| Group, LLC; Stewardship Investment  )  | |
| Advisors, LLC; Stewardship Credit  )  | |
| Arbitrage Fund, LLC; Putnam Green, LLC;  )  | |
| Livingston Acres, LLC; and ACG II, LLC,  )  | |
| )  | |
| Defendants,  )  | |
| )  | |
| Florene Quan,  )  | |
| )  | |
| Relief Defendant,  )  | |
| )  | |
| Nigel Chatterjee; DZ Bank AG Deutsche  )  | |
| Zentral-Genossenschaftsbank, Frankfurt  )  | |
| am Main; and Sovereign Bank,  )  | |
| )  | |
| Intervenors,  )  | |
| )  | |
| and  )  | |
| )  | |
| Gary Hansen,  )  | |
| )  | |
| Receiver.  )  | |

_____

Jonathan T. Shepard, Esq., Robert M. Fleischer, Esq., and Eric M. Fishman, Esq., Pryor Cashman LLP, New York, NY, and George E. Warner, Esq., Warner Law, LLC, Minneapolis, MN, on behalf of Applicant Intervenors Topwater Exclusive Fund III, LLC; Freestone Low Volatility Partners, LP; and Freestone Low Volatility Qualified Partners, LP.

Timothy S. Leiman, Esq., John E. Birkenheier, Esq., Charles J. Kerstetter, Esq., and Sally J. Hewitt, Esq., U.S. Securities and Exchange Commission, Chicago, IL, on behalf of Plaintiff U.S. Securities and Exchange Commission.

Bruce E. Coolidge, Esq., Wilmer Cutler Pickering Hale and Dorr LLP, Washington, D.C., on behalf of Defendants Marlon Quan; Acorn Capital Group, LLC; and Stewardship Investment Advisors.

Ranelle Leier, Esq. and Gary Hansen, Esq., Oppenheimer Wolff & Donnelly LLP, Minneapolis, MN, on behalf of Receiver Gary Hansen.

Hille R. Sheppard, Esq. and Stephen C. Carlson, Esq., Sidley Austin LLP, Chicago, IL, on behalf of Intervenor DZ Bank AG Deutsche Zentral-Genossenschaftsbank, Frankfurt am Main.

_____

## I.  INTRODUCTION

On March 22, 2013, the undersigned United States District Judge heard oral argument on Applicant Intervenors Topwater Exclusive Fund III, LLC; Freestone Low Volatility Partners, LP; and Freestone Low Volatility Qualified Partners, LP's (the "Preferred Investors") Motion to (1) Intervene and (2) Modify Order Appointing Receiver [Docket No. 220].  The Preferred Investors seek modification of the Court's April 30, 2012 Memorandum Opinion and Order ("Receivership Order") [Docket No. 149], which provides that Receiver Gary Hansen (the "Receiver") shall propose a claims and distribution process for distributing frozen receivership funds within 45 days of the entry of any order for disgorgement.  The Preferred Investors contend the receivership funds are not subject to disgorgement, and therefore request that the Receivership Order be modified to permit the Receiver to commence the claims process and propose a distribution plan immediately.

Responses to the Motion have been filed by Plaintiff U.S. Securities and Exchange Commission ("SEC") [Docket No. 228], the Receiver [Docket No. 235], and Intervenor DZ Bank AG Deutsche Zentral-Genossenschaftsbank, Frankfurt am Main ("DZ Bank") [Docket No. 242].  Although the request to intervene is not opposed, the SEC and Receiver both oppose the request to modify the Receivership Order.  They argue the receivership funds are subject to disgorgement and that a disgorgement order would significantly impact the distribution of the receivership funds.  DZ Bank, a creditor asserting an interest in the receivership funds, agrees

2

with the Preferred Investors' assertion that the receivership funds are not subject to disgorgement. DZ Bank also contends that even if the receivership funds were disgorged, DZ Bank has a priority claim to the funds. For the reasons set forth below, the Preferred Investors' Motion to Intervene is granted. The request to modify the Receivership Order is denied.

## II.  BACKGROUND

This SEC enforcement action alleges Defendant Marlon Quan ("Quan") and entities owned and controlled by him fraudulently induced investors into investing in hedge funds that he founded and managed. See generally Am. Compl. [Docket No. 160]. Approximately $18 million in recoveries from the hedge funds' failed investments have been frozen and placed into a receivership pending a determination of whether Quan's investors hold a superior interest over other claimants to the frozen funds. See Mem. Opinion & Order, May 3, 2011 [Docket No. 51] ("May 3, 2011 Order") at 14; Order, Dec. 12, 2011 [Docket No. 76]; Receivership Order at 2. This Motion addresses whether the Receiver should commence the claims process and propose a distribution plan for the receivership funds at this time, or whether such action should be deferred until the merits of the SEC's case have been resolved.

**A.  SCAF and the Preferred Investors**

Defendant Stewardship Credit Arbitrage Fund, LLC ("SCAF") is a domestic hedge fund that was managed and controlled by Quan. Am. Compl. ¶¶ 3-4. SCAF's managing member is Defendant Stewardship Investment Advisors, LLC ("SIA"), which Quan owns and controls. Id. ¶¶ 3-4. The Preferred Investors aver they are investors in preferred shares of SCAF. Mem. Supp. Mot. Intervene & Modify Order Appointing Receiver [Docket No. 222] at 1.

**B. Investment Losses**

A majority of the funds from investors in Quan's hedge funds was used to purchase promissory notes issued by Thomas J. Petters (the "Petters Notes"). Am. Compl. ¶¶ 7-9. In September of 2008, Petters was arrested and was later convicted of perpetrating a massive Ponzi scheme through the sale of the Petters Notes. Id. ¶ 7. Investors in SCAF allegedly face losses of $111 million. Id. ¶ 32.

**C. SEC Action**

On March 24, 2011, the SEC filed this action alleging violations of federal securities laws stemming from the sale of investments in the Petters Notes. See generally Compl. [Docket No. 1]. The SEC alleges, among other things, that Quan and his employees, acting on behalf of SIA and SCAF, misled investors by falsely representing that the investments in Petters Notes were safeguarded by a lockbox arrangement requiring retailers to make Note payments directly into a lockbox account. Am. Compl. ¶¶ 11-13, 78-85. The misrepresentations were allegedly made in private placement memoranda, marketing materials, newsletters, and monthly account statements, some of which were issued in SCAF's name. See id. ¶¶ 78-85. According to the SEC, Quan had known as early as 2001 that payments into the lockbox account were being made by an entity owned by Petters, rather than by retailers. Id. ¶ 15. The SEC also alleges Quan, SCAF, and other Quan-controlled entities participated in a fraudulent scheme to conceal defaults on the Petters Notes by agreeing to conduct a series of "round trip" transactions with a Petters entity to create the false illusion that the Petters Notes were being repaid. Id. ¶¶ 116-125.

**D. Asset Freeze, Receivership**

At the time this case was commenced, the Court imposed a freeze on funds that Quan and

his entities were to receive in a settlement agreement pertaining to the Petters Notes. May 3, 2011 Order at 10-16. The funds were frozen to prevent their dissipation in the event that it was later determined that investors held a superior interest in the funds. Id. at 10, 14.

In April, 2012, the Court issued the Receivership Order appointing Gary Hansen as Receiver over the frozen funds, SCAF, and SCAF's subsidiaries.[1] See Receivership Order at 11-14, 16. With regard to distributing the receivership funds, the Receivership Order provides:

> Within 45 days of entry of any order for disgorgement of funds in this case, the Receiver shall propose to this Court and to the Commission a transparent claims and distribution process that provides all interested parties – including the Commission – with notice, an opportunity to submit their claims, and an opportunity to be heard before the Receiver and the Commission jointly or separately submit their recommended distribution plan(s) to the Court.

Id. at 23, ¶ XVII.

**E. Present Motion**

The Preferred Investors seek to intervene, arguing that as preferred shareholders in SCAF they have a recognizable interest in ensuring the receivership funds are disbursed in accordance with SCAF's operative documents. The Preferred Investors contend SCAF's operative documents provide for a liquidation preference over other SCAF investors.

The Preferred Investors also request that the Receivership Order be modified to allow the Receiver to commence the claims process and propose a distribution plan immediately, rather than awaiting any entry of a disgorgement order. They argue it is not necessary to defer until the merits have been resolved before commencing the claims and proposing a distribution plan,

---

[1] SCAF's subsidiaries are Defendants Putnam Green, LLC and Livingston Acres, LLC. Am. Compl. ¶ 4.

because the receivership funds are not subject to disgorgement.  The Preferred Investors insist the receivership funds may not be disgorged from SCAF because: (1) the funds are not ill-gotten gains but rather are legally-obtained recoveries on the Petters Notes and other investments;[2] (2) disgorgement of ill-gotten gains in the hedge fund context is limited to management and incentive fees wrongfully obtained by an investment advisor (here, Quan and SIA), and does not extend to the assets of a hedge fund (here, SCAF); and (3) SCAF cannot be found liable for fraud because all of SCAF's investment decisions were made by Quan through SIA.

The SEC responds that the receivership funds are ill-gotten gains subject to disgorgement because SCAF defrauded investors by making material misrepresentations and participating in a scheme to conceal defaults on the Petters Notes.  The SEC thus argues the funds from the Petters Notes belong to defrauded investors, not to SCAF itself.

The SEC, along with the Receiver, also argue that it would be premature for the Receiver to propose a distribution plan for the receivership funds at this time, because disgorgement of the receivership funds would significantly affect distribution of the funds.  The SEC and Receiver contend that if the SEC prevails on its position that the receivership funds should be disgorged, the funds would be returned to investors according to an equitable distribution plan proposed by the Receiver.  The distribution plan could elevate investors' claims over creditors' claims or exclude creditors' claims altogether.  If the SEC does not prevail, SCAF's funds would remain with SCAF and be distributed to investors, creditors, and other parties according to SCAF's governing documents and other legal rules of priority.

---

[2] DZ Bank, a creditor asserting an interest in the receivership funds, agrees with this assertion.

## III.  DISCUSSION

### A.  Request to Intervene

The Preferred Investors seek to intervene under Federal Rule of Civil Procedure 24(a)(2). The request to intervene is unopposed and is granted based on the files and records in this case.

### B.  Request to Modify Receivership Order

Whether the Receivership Order should be modified turns on whether the receivership funds are subject to disgorgement and, if so, whether disgorgement would impact the distribution of the receivership funds.

A district court possesses broad equitable discretion in fashioning a remedy for violations of federal securities laws. SEC v. Fischbach Corp., 133 F.3d 170, 175 (2d Cir. 1997); SEC v. Manor Nursing Ctrs, Inc., 458 F.2d 1082, 1103 (2d Cir. 1972). A defendant found liable of securities fraud may properly be ordered to disgorge ill-gotten gains. SEC v. Ridenour, 913 F.2d 515, 517 (8th Cir. 1990). The amount disgorged "should include all gains flowing from illegal activities." SEC v. Credit Bancorp, Ltd., No. 99 Civ. 11395, 2011 WL 666158, at *2 (S.D.N.Y. Feb. 14, 2011); see also Manor Nursing, 458 F.2d at 1104 (affirming district court's order for disgorgement of all investor proceeds received by defendants in connection with a fraudulent public offering). The primary purpose of disgorgement is to deter violations of securities laws by depriving wrongdoers of their ill-gotten gains. Fischbach Corp., 133 F.3d at 175. A district court has "discretion to order that disgorged funds be used to compensate securities fraud victims." Id. at 176.

#### 1. Receivership Funds May be Subject to Disgorgement

The Preferred Investors and DZ Bank argue the receivership funds were legally obtained

from the liquidation of the Petters Notes and are not ill-gotten gains subject to disgorgement. However, disgorgement extends to "all gains flowing from illegal activities." Credit Bancorp, Ltd., 2011 WL 666158, at *2. The SEC alleges the Petters Notes were purchased with monies fraudulently obtained from investors. Thus, the proceeds on the Petters Notes allegedly flow from SCAF's illegal activities and may constitute ill-gotten gains.

The Preferred Investors also contend that in securities fraud cases involving hedge funds, the remedy of disgorgement is limited to management and investment fees wrongly obtained by an investment advisor, and does not extend to the assets of the hedge fund itself. As authority for this proposition, the Preferred Investors cite three cases where disgorgement of hedge fund assets was not ordered. See generally SEC v. Cioffi, 868 F. Supp. 2d 65 (E.D.N.Y. 2012); SEC v. Kapur, No. 11 Civ. 8094, 2012 WL 5964389 (S.D.N.Y. Nov. 29, 2012); SEC v. Lawton, Civ. No. 09-368, 2011 WL 494888 (D. Minn. Feb. 7, 2011). However, none of the cited cases involved an attempt by the SEC to disgorge hedge fund assets. See Cioffi, 868 F. Supp. 2d 65 (hedge fund not named as a defendant); Kapur, 2012 WL 5964389 (same); Lawton, 2011 WL 494888 (disgorgement sought only against hedge fund manager and investment advisory firm and not against hedge fund). Thus, the cases are not precedent that hedge fund assets may not be disgorged. Additionally, precedent does exist for awarding disgorgement against a hedge fund. See SEC v. Haligiannis, 470 F. Supp. 2d 373, 387 (S.D.N.Y. 2007) (holding hedge fund jointly and severally liable for disgorgement of net amount of investor contributions to hedge fund). Given this precedent coupled with the Court's broad authority and discretion to fashion appropriate remedies for securities laws violations, the Preferred Investors' argument that disgorgement of hedge fund assets cannot occur under any circumstances which might later be

proven is rejected.

The Preferred Investors further argue that receivership funds belonging to SCAF cannot be disgorged because, to the extent Quan committed fraud, he did so through investment advisor SIA and not through SCAF. The Preferred Investors contend SCAF was not capable of committing fraud because SIA was vested with full authority to make all investment and trading decisions on SCAF's behalf. However, the close relationship between investment advisors and investment funds in the securities industry does not necessarily preclude a finding of illegal conduct by an investment fund. See, e.g., Janus Capital Grp, Inc. v. First Derivative Traders, 131 S. Ct. 2296, 2304-05 (2011) (finding false statements included in mutual fund's prospectuses were made by mutual fund and not by its investment advisor, notwithstanding close relationship between the two entities); Haligiannis, 470 F. Supp. 2d at 381-82 (finding hedge fund liable for securities laws violations). The SEC alleges that SCAF, a legally separate entity from SIA, made false statements of material fact in private placement memoranda, marketing materials, newsletters, account statements, and other materials issued in its name, and that SCAF participated in a fraudulent scheme to conceal defaults on the Petters Notes. Thus, the potential exists for SCAF to be found liable and for the receivership funds to be disgorged.

### 2. Disgorgement Would Impact Distribution

The entry of a disgorgement order against SCAF may impact distribution of the receivership funds. Upon disgorgement of a defendant's ill-gotten gains, "it remains within the court's discretion to determine how and to whom the money will be distributed." Fischbach Corp., 133 F.3d at 175. A district court has broad powers and wide discretion in approving an equitable distribution plan for receivership funds. SEC v. Great White Marine & Recreation,

Inc., 428 F.3d 553, 556 (5th Cir. 2005); SEC v. Homeland Commc'ns Corp., No. 07-80802, 2010 WL 2035326, at *2 (S.D. Fla. May 24, 2010). "[N]o specific distribution scheme is mandated so long as the distribution is fair and equitable." Homeland Commc'ns Corp., 2010 WL 2035326, at *2 (quotation marks omitted). In exercising its broad discretion, a court is not bound by "formalistic arguments that would otherwise be available in a traditional lawsuit." Broadbent v. Advantage Software, Inc., 415 F. App'x. 73, 78 (10th Cir. 2011).

If the SEC prevails on its fraud claims and SCAF is disgorged of its assets, the Receiver may propose, and the Court has broad authority to approve, a distribution plan that is governed by equitable principles rather than SCAF's operating documents and other legal rules governing priority. If the SEC does not prevail and SCAF retains its assets, distribution of the receivership funds will be more heavily guided by established legal rules and preferences. Thus, the merits of the SEC's claims must be resolved before the Receiver may propose a distribution plan for the receivership funds.

Similarly, the Receiver will not be required to immediately commence a formal claims process. There is no language in the Receivership Order precluding the Receiver, in his discretion, from presently soliciting or collecting claims to the receivership funds, however a disgorgement order would affect whether the claims are allowed and how they are prioritized. Therefore, the immediate commencement of a claims process is not required.

Finally, deferring until the merits of this case are resolved before a distribution plan is proposed will not significantly delay the distribution of receivership funds. The merits will soon be reached, with dispositive motions to be filed in approximately six weeks and the case to be trial ready by August 1, 2013. See Am. Pretrial Scheduling Order [Docket No. 214] at 5.

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that the Preferred Investors' Motion [Docket No. 220] is **GRANTED** as to the request to intervene, and **DENIED** as to the request to modify the Receivership Order.

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: April 19, 2013.