## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

- - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES SECURITIES   :

AND EXCHANGE COMMISSION,  :    CIVIL ACTION

                  :    0:11-cv-00723-ADM-JSM

       Plaintiff,    :

                  :

    v.              :

                  :

MARLON QUAN, et al.,      :

                  :

       Defendants.   :

- - - - - - - - - - - - - - - - - - - - - - - - x

### PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S RESPONSE TO DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY

This case involves hedge funds, feeder funds, funds of funds, asset based lending, lockbox accounts, cash collateral, Paydex indices, security agreements, credit agreements, due diligence, red flags, loan origination, loan servicing, credit insurance, audits, accounts receivable, confirmations, limited liability companies, and registered investment advisers.

The Defendants claim the case is "relatively straightforward." (Dkt. # 293, at 1.) At its core, the case is straightforward. Marlon Quan was an investment adviser, by law a fiduciary. He owed the highest duty of honesty and fair dealing to his clients. Instead, he lied to them, fed them half-truths, and looked out for himself. But should this case go to trial, in order for the jury to arrive at the straightforward core of the case, they will first have to cut their way through a thicket of arcane financial concepts and jargon.

That would be a simple task for the Court or for counsel in this case or for some investment professionals.  But the segment of the finance industry from which this case arises is unfamiliar territory to many potential jurors.  Consider, for example, the following questions.  What is asset based lending?  What were the protections offered by insurance against defaults, audits, and a lockbox, as promised by the Quan?  What is a lockbox?  What are accounts receivable confirmations?  What is credit insurance?  What were the implications of Quan's failure to deliver the promised safeguards?

Many jurors will benefit from help in understanding the evidence, including explanations of the complex renegotiations into which Quan entered, explanations and opinions as to how Quan and the other Defendants failed to deliver what they promised, and explanations and opinions as to how Quan's actions benefited himself at the expense of his investors.  A jury will likewise benefit from summaries of the voluminous financial records involved in this case.

Because many of the facts and concepts central to this case are beyond the general familiarity and understanding of a lay jury, the SEC has retained Michael G. Mayer to assist the jury in its consideration of the evidence.  Mr. Mayer is a Chartered Financial Analyst and a Certified Fraud Examiner.  He holds an MBA from the Northwestern University Kellogg School of Management.  He has particular knowledge of the subject matter of this suit, having served as a consultant and expert witness in several prior engagements involving asset based lending and hedge funds.  Mr. Mayer has both broad and deep expertise in the securities and financial services industry, and is well-suited to help the jury gain an understanding of the complicated terms and concepts at issue in this

case.  Mr. Mayer's qualifications and opinions readily satisfy the requirements for the admission of expert testimony.

The SEC has also listed among its potential witnesses several individuals, who, in addition to being percipient witnesses with personal knowledge of relevant facts, are also experienced money managers and auditors.  The SEC has not retained any of these witnesses as experts, nor has the SEC asked them to review the record of this case or to form opinions.  The SEC expects to ask these witnesses about topics such as their discussions with Marlon Quan and his agents; written communications they received from Quan and his agents; their understanding of the investment Quan offered and the safeguards Quan promised; their reasons for investing with Quan; the significance to them of information Quan concealed from them; and, in the case of the money managers, the losses they and their clients experienced through their investment with Quan.

Given the expertise of these witnesses, it is all but inevitable that their testimony will be informed by and reflect their knowledge and experience as money managers and auditors.  Indeed, Quan's defense places significance on what a "sophisticated" investor would typically do.  The SEC believes that these witnesses' testimony will constitute fact testimony.  Nevertheless, others might construe some of the witnesses' testimony to be expert opinions and conclusions, such as reasons for investing with Quan, reactions to the safeguards Quan promised, conclusions whether Quan delivered what he promised, and reactions to the facts Quan concealed from them.  For the sake of transparency, the SEC gave notice to the Defendants by disclosing the witnesses in question as non-retained experts under Fed. R. Civ. P. 26(a)(2)(C) and listing all the topics about which the SEC

expects to question the witnesses.  The SEC further agreed to allow the Defendants to depose these witnesses during the period for expert discovery if they chose to do so.

The Defendants have moved the Court to exclude the testimony of Mr. Mayer in its entirety and to preclude the SEC from eliciting any opinions from the witnesses designated under Rule 26(a)(2)(C).  (Dkt. # 293.)  For the reasons stated below, Defendants' motion should be denied.

## BACKGROUND

### 1.   Mr. Mayer's Qualifications

Mr. Mayer has a B.S. from Indiana University and an M.B.A. from the Northwestern University Kellogg School of Management.  (Ex. 1, Mayer Report, Tab 1, p. 1.)  He is a Charted Financial Analyst and a Certified Fraud Examiner.  (*Id.*)  He has over 25 years' experience serving as a consultant and expert in disputes involving business, banking, and securities.  (*Id.*, pp. 1-2.)  He has performed financial investigations of brokerage firms, hedge funds, savings and loans, and banks.  (*Id.*, p. 1.)  Mr. Mayer is regularly called upon to analyze complex securities and explain their structure.  (*Id.*)  He has also been a regular instructor on fraud issues at the Federal Financial Institutions Examination Council's Advanced White Collar Crime School.  (*Id.*, p. 2.)

Mr. Mayer has managed a small private equity fund.  (Ex. 2, Mayer Dep. Tr. at 55:21-58:5.)  He has personally performed due diligence on prospective private equity investments.  (*Id.*, 55:15-56:11.)  His due diligence included site visits (*id.*, 62:13-63:9)

and inquiries into trade credit and customers of prospective investments.  (*Id.*, 59:9-61:17.)

Mr. Mayer has also served as a consultant to asset based lenders going back many years.  (*Id.*, 66:13-67:22.)  He has consulted for and advised asset based lenders apart from litigation (*id.*, 73:6-13; 74:4-15; 80:11-23), and he has been retained by asset based lenders in several litigation matters.  (*Id.*, 70:16-71:8; 75:6-76:21; 81:6-82:12.)  He has addressed, among other topics, suitability of investment recommendations, portfolio management, and due diligence.  (*Id.*, 78:1-79:1; 81:17-82:12.)  Mr. Mayer has also previously been retained in other financial and banking cases to consider and testify about due diligence and its effect on investment decisions (*id.*, 116:3-24), misrepresentations in private placement memoranda and their effects (*id.*, 145:1-148:10), and red flags.  (*Id.*, 192:9-193:13.)

## 2.   Mr. Mayer's Methodology

In performing his work on this engagement, Mr. Mayer employed the conventional methodology for non-scientific cases such as this one.  The basic methodology he employed was to perform a comparison.  He reviewed the evidence amassed through discovery and compared what happened in this case to normal practices in the hedge fund and asset based lending fields.  (*Id.*, 104:16-24; 105:12-24; 106:16-107:3.)  For example, to determine what safeguards Quan and his agents promised to investors, Mr. Mayer relied on testimony and presentations the Defendants made to investors.  (*Id.*, 154:19-155:10.)  He reviewed the evidence to determine what Quan and his agents had actually provided.  (*Id.*, 155:13-24.)  And then he compared the two.  (*Id.*,

155:17-19.)  In making this comparison, Mr. Mayer put what Quan promised and what Quan delivered in the context of what an investor could reasonably expect and the importance to an investor of that information.  (*Id.*, 156:8-57:8.)  For cases such as this one, involving non-scientific expert opinions, application of the expert's experience and common industry practice and knowledge is routinely recognized as a reliable and acceptable methodology.  *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999); *Finke v. Hunter's View, Ltd.*, 596 F. Supp. 2d 1254, 1264 (D. Minn. 2009); Fed. R. Evid. 702 Advisory Committee Notes.

### 3.   Mr. Mayer's Report

Rule 26(a)(2)(B) requires that an expert's report contain, among other things, a complete statement of the opinions the witness will express, the bases and reasons for those opinions, and the facts or data considered by the expert in forming their opinions. Mr. Mayer's report satisfies these requirements.  Mr. Mayer's report consists of six components: a statement of his qualifications (Ex. 1, p. 1 and Tab 1); a description of his assignment (*id.*, p. 1); the information he reviewed in reaching his opinions (*id.*, p. 2 and Tab 2); a statement of the factual background of the case (*id.*, pp. 2-18); his opinions (*id.*, pp. 18-75); and a declaration.  (*Id.*, p. 75.)

Mr. Mayer sets out the facts and data he relied on in forming his opinions through multiple means.  He provides an extensive list of the materials he reviewed.  (*Id.*, Tab 2.) He supports his assertions with nearly 400 citations to documentary evidence, deposition and testimony transcripts, and articles and publications related to asset based lending and the hedge fund industry.  (*Id.*)  He makes use of extensive quotes and extracts from

transcripts and exhibits set out in the text of his report.  (*E.g.*, *id.*, pp. 37-38 and p. 49.)

Mr. Mayer also sets out the salient background facts of the case, including descriptions of

Tom Petters, Marlon Quan, their relationship, and the key agreements into which they

entered, together with a timeline of important events.  (*Id.*, pp. 2-13, 18.)  In addition, Mr.

Mayer explains selected financial concepts and definitions.  (*Id.*, pp. 13-17.)  He

concludes by providing summaries of voluminous financial records relating to the harm

suffered by investors and the gains received by Quan.  (*Id.*, pp. 69-74, Tabs 4 and 5.)

Mr. Mayer states his opinions and explains his reasons for reaching those opinions

in great detail.  (*Id.*, pp. 19-74.)  Mr. Mayer opines that Quan and the other Defendants

did not provide several important safeguards which they promised to investors: due

diligence, lockbox account, insurance against risk of default, blocked account/cash

collateral, and third-party audits.  (*Id.*, pp. 19-60.)  Mr. Mayer explains these safeguards

and why they were important.  (*Id.*)  Based on extensive references to the evidence and

industry norms, he concludes that Quan and the other Defendants did not deliver the

safeguards as promised.  (*Id.*)  He then explains the consequences of the Defendants'

failure to provide the promised safeguards.  (*Id.*)

Mr. Mayer next turns to several complex transactions in which Quan engaged,

including certain reinvestments in 2007 and 2008, the February 2008 restructuring, and

the May 2008 restructuring.  (*Id.*, pp. 60-69.)  Mr. Mayer explains the transactions in

question together with their importance.  (*Id.*)  Then, based on extensive references to the

evidence and industry practice, he explains his opinions that these transactions were

improper and did not benefit the investors (*id.*), contrary to the assertions of the

Defendants in this proceeding.

### 4.      The Non-Retained Expert Witnesses

Among the persons whom the SEC expects to call are several fact witnesses who,

by reason of training and experience, are experts in their own right.  Some of these

witnesses are professional money managers; others are auditors.  The SEC plans to call

these witnesses because they have firsthand knowledge of relevant facts.  However, it is

likely that their testimony about the facts will be intertwined with matter that could be

considered expert testimony.  For example, testimony from one of the professional

money managers about whether he or she considered a particular piece of information

important would unavoidably reflect the witness's opinion and be based on his or her

professional experience and knowledge of the hedge fund industry.  Accordingly, out of

an abundance of caution and in the spirit of transparency, the SEC disclosed these

witnesses not only as fact witnesses but also as non-retained experts under Rule

26(a)(2)(C).  The SEC listed all the topics about which the SEC expects to question these

witnesses.  The SEC further agreed to allow the Defendants to depose these witnesses

during the period for expert discovery if they chose to do so.  Defendants did depose

certain of these witnesses, and informally interviewed others.

### 5.      Defendants' Motion

Defendants seek to exclude Mr. Mayer's testimony, "in its entirety."  (Dkt. 293, at

1).  They additionally seek to preclude thirteen of the SEC's witnesses from providing

opinion testimony.

**ARGUMENT**

**1.     Mr. Mayer's Testimony is Admissible**

A court should "admit the testimony of a witness whose knowledge, skill, experience, training, or education merits expert status if (1) the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue . . . and (2) the evidence is relevant and reliable." *U.S. v. Two Elk*, 536 F.3d 890, 903 (8th Cir. 2008) (citing Fed. R. Evid. 702 and *Daubert v. Merrill Dow Pharms, Inc.*, 509 U.S. 579, 588-91 (1993)). As this Court recognizes, "Rule 702 favors admitting expert testimony." *Blandin Paper Co. v. J&J Indus. Sales, Inc.*, 2004 U.S. Dist. LEXIS 17550, *17 (D. Minn. Sept. 2, 2004) (citing *Arcoren v. U.S.*, 929 F.2d 1235, 1239 (8th Cir. 1991)). Thus, "[d]oubts regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *Keller v. CNH Am., LLC*, 2009 U.S. Dist. LEXIS 52577, *16-17 (D. Minn. June 22, 2009) (citing *Miles v. Gen. Motors Corp.*, 262 F.3d 720, 724 (8th Cir. 2001)).

"Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." *Bonner v. Isp Techs.*, 259 F.3d 924, 929-30 (8th Cir. 2001) (citing *Hose v. Chicago Northwestern Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1996)). For this reason, this Court holds that the "preferred way to challenge an expert is 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof,' not exclusion of the expert." *Global Traffic Techs., LLC v. Emtrac Sys.*, 2013 U.S. Dist. LEXIS 73700, *64 (D. Minn. May 24, 2013) (quoting *Daubert*, 509 U.S. at 596).

Mr. Mayer's report satisfies the foregoing standards.  Mr. Mayer is well qualified

by education and by years of experience working for asset based lenders and other

finance industry participants, both as a consultant and as an expert witness.  Mr. Mayer's

report is solidly grounded on the evidence and on industry norms drawn from his

experience and the professional publications to which he refers.  Defendants obviously

disagree with Mr. Mayer's opinions.  But their recourse is to try to convince the jury that

Mr. Mayer is wrong through cross examination and the presentation of contrary evidence.

## 2.      **Mr. Mayer's Testimony Will Assist the Jury**

Courts routinely recognize that "in securities cases, expert testimony commonly is

admitted to assist the trier of fact in understanding trading patterns, securities industry

practice, securities industry regulations, and complicated terms and concepts."  *SEC v.*

*Johnson*, 525 F. Supp. 2d 70, 77 (D.D.C. 2007); *see also U.S. v. Bilzerian*, 926 F.2d

1285, 1294 (2d Cir. 1991) ("Particularly in complex cases involving the securities

industry, expert testimony may help a jury understand unfamiliar terms and concepts.").

The reasoning of the foregoing decisions applies directly to this case.  Jurors will

not be able to understand what happened in this case unless they understand the context

in which the events occurred.  Contrary to Defendants' claim that he will usurp the role

of the jury, Mr. Mayer's testimony will provide invaluable assistance to the jury by

helping them understand the practices, concepts, and jargon of hedge funds and asset

based lending.  For instance, the jury cannot decide whether Quan defrauded his investors

by failing to obtain audited financial statements from Petters's entities unless the jury

understands how accounts receivable are tested through confirmations and inventory

tested through observation, as well as the implications in the context of this case.  The same is true about the issues surrounding the lockbox, the blocked account, and due diligence.

Mr. Mayer's testimony will be especially valuable in assisting the jury to understand the complex renegotiations into which Quan and Petters entered in 2008.  What did Quan give up?  What did Quan receive in exchange?  What alternative remedies were available to Quan under his existing agreements?  How did the renegotiated agreements change the investments Quan had sold to his investors?   How and why would disclosure of the renegotiated agreements enter into the decision making of investors?  Mr. Mayer's testimony will enable the jurors to place the events of this lawsuit in the context of the unfamiliar practices, concepts, and terms necessary to understand what happened here.  Thus, his testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue," and is accordingly admissible under FRE 702.

The Defendants complain that Mayer's testimony offers "ultimate conclusions" on certain of the SEC's claims.  However, this is no grounds for excluding expert testimony.  Indeed, the Eighth Circuit has "repeatedly held that an expert . . . may express his opinion on the ultimate jury question." *U.S. v. Kelly*, 679 F.2d 135, 136 (8th Cir. 1982); *see also* FRE 704(a) ("An opinion is not objectionable just because it embraces an ultimate issue.").[1]  Despite Defendants' claims that Mr. Mayer's opinions regarding Quan's

---

[1] Contrary to Defendants' assertions, Mr. Mayer's opinion does not make credibility determinations or opine on anyone's state of mind.  While Defendants' challenge Mr.

fiduciary duties are inadmissible, the Eight Circuit and courts in this district routinely allow experts to opine on fiduciary duties owed by a defendant. *See, e.g., U.S. v. Keiser*, 578 F.3d 897, 904 (8th Cir. 2009); *Afremov v. Sulloway & Hollis, P.L.L.C.*, 2013 U.S. Dist. LEXIS 16445, *43 (D. Minn. Feb. 7, 2013); *Lindquist & Vennum P.L.L.P. v. Speciale,* 2008 U.S. Dist. LEXIS 2518, *19 (D. Minn. Mar. 28, 2008); *Triple Five of Minn., Inc. v. Simon,* 2003 U.S. Dist. LEXIS 28199, *17-18 (D. Minn. Mar. 19, 2003); *Myer v. Dygert*, 156 F. Supp. 2d 1081, 1090-92 (D. Minn. 2001).

Defendants are also wrong when they suggest that Mr. Mayer's opinions regarding Quan's obligations to investors have "no legal basis." Citing *Goldstein v. SEC*, 451 F.3d 873 (D.C. Cir. 2006), Defendants argue that Quan had no obligation to disclose key information to investors. (Dkt. # 293, at 28). But Defendants ignore that in the wake of *Goldstein*, the SEC enacted Investment Advisers Act Rule 206(4)-8, and that in this case the SEC charges Quan with violating that provision. Rule 206(4)-8 prohibits investment advisers to a "pooled investment vehicle," such as hedge fund, from making:

> any untrue statement of a material fact or *to omit to state a material fact* necessary to make the statements made, in the light of the circumstances under which they were made, not misleading, *to any investor or prospective investor in the pooled investment vehicle*.

17 C.F.R. § 275.206(4)-8 (emphasis added). Thus, Mr. Mayer's opinions that Quan was under an obligation to disclose material information to his hedge funds' investors is

---

Mayer's conclusions regarding Quan's conduct, the facts supporting those conclusions, such as the information Quan had in his possession, are not in dispute. Accordingly, the appropriate means for challenging Mr. Mayer's conclusions are through cross-examination, not the exclusion of his testimony.

consistent with the law and an appropriate subject of expert testimony.[2]  Moreover, to the

extent Defendants argue that Quan is not an "investment adviser" under the Advisers Act,

they are also incorrect.  Quan meets the statutory definition because he was Stewardship

IA's managing member and controlled the firm.  *SEC v. Haligiannis*, 470 F. Supp. 2d

373, 378-79, 383, (S.D.N.Y. 2007) (citing *Abrahamson v. Fleschner*, 568 F.2d 862, 870

(2d Cir. 1977); *In re Kenny*, 2003 SEC LEXIS 1170, *63 n.54 (SEC May 14, 2003) ("an

associated person is liable under Section 206 where the investment adviser is an alter ego

of the associated person or is controlled by the associated person.").[3]

### 3.    Mr. Mayer Is Qualified to Offer Expert Testimony

Mr. Mayer has extensive professional experience advising asset based lenders as a

consultant.  He has testified in multiple cases involving asset based lending.  He has

previously addressed questions of asset based lending practices, due diligence, suitability,

and red flags.  He has personally performed due diligence for a small private equity fund

---

[2] Similarly, while Defendants argue that Mr. Mayer's opinions on "red flags" that should
have caused Quan to take action are inadmissible, courts routinely allow expert testimony
on "red flags" or other industry-specific warning signs. *See, e.g., Huggins v. Stryker
Corp.*, 2013 U.S. Dist. LEXIS 41260, *54-55 (D. Minn. Mar. 25, 2013)*; U.S. v. Sarcona*,
457 Fed. Appx. 806, 816 (11th Cir. 2012), *cert. denied*, 133 S. Ct. 268 (2012); *Crown
Cork & Seal Co. v. Credit Suisse*, 2013 U.S. Dist. LEXIS 34368, *40-45 (S.D.N.Y. Mar.
12, 2013); *Davis v. Carroll*, 2013 U.S. Dist. LEXIS 45884, *126-128 (S.D.N.Y. Mar. 29,
2013).

[3] Defendants' mischaracterize Mr. Mayer's opinion by suggesting that he opines that
Quan had no right to change the Funds' investment strategy regarding the February and
May 2008 restructurings.  Mr. Mayer does not challenge Quan's ability to change the
strategy, but instead opines that Quan had the obligation to inform investors of any
material change in strategy.

which he managed.  He is a Chartered Financial Analyst.  And he received his M.B.A.

from one of the nation's leading business schools.  Nevertheless, Defendants challenge

Mr. Mayer's qualifications.  (Dkt. # 293, at 9).

Defendants argue that Mr. Mayer is unqualified because he has never worked as

an employee for an asset based lender or similar financial institution.  In making this

argument, Defendants understate Mr. Mayer's experience and overstate the law.

Defendants ignore that Mr. Mayer has served as a consultant and adviser to asset based

lenders.  *Daubert* and its progeny certainly make no requirement that an expert be an

employee, as opposed to a consultant, in a particular field.

Further, a general expertise in a particular field is sufficient to allow an expert to

testify as to specific concepts within that field.  *See, e.g. Icon Health & Fitness, Inc. v.*

*Octane Fitness, LLC,* 2011 U.S. Dist. LEXIS 64770, *18 (D. Minn. June 17, 2011)

(mechanical engineer qualified to testify about subject elliptical machine, even though he

had no experience designing or manufacturing elliptical machines); *In re Zurn Pex*

*Plumbing Products Liab. Litig.*, 267 F.R.D. 549, 557 (D. Minn. 2010) (allowing

statistician with no experience regarding plumbing products to testify in defective

plumbing litigation, and noting that expert's "lack of practical experience in plumbing

products may affect the weight of his testimony, it does not preclude his testimony");

*Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1101 (8th Cir. 2006) ("Most courts

have held that a physician with general knowledge may testify regarding medical issues

that a specialist might treat in a clinical setting.").  Mr. Mayer's experience and education

– including consulting work for asset based lenders –  are more than sufficient to satisfy

this standard.[4]

### 4.    Mr. Mayer's Testimony is Relevant

For purposes of Rule 702, "[r]elevance means simply that the testimony will

"assist the jury in determining any fact at issue in the case." *Icon Health & Fitness,* 2011

U.S. Dist. LEXIS 64770 at *19 (citations omitted).  As discussed above, Mr. Mayer's

testimony will assist the jury and is highly relevant to the SEC's claims.  Specifically,

Mr. Mayer will testify about Defendants' representations, omissions, and conduct that

form the basis of the SEC's claims.  His testimony will assist the jury in understanding

the industry-specific practices, concepts, and terminology which form the context in

which the events of this case occurred.

Defendants apparently concede the relevance of Mr. Mayer's anticipated

testimony, as they only challenge the relevancy of one particular aspect of his report:  His

quantification of investor losses.  (Dkt. # 293, at 23).  Contrary to Defendants'

arguments, however, the amount of investor loss is highly relevant, *and a statutory*

*requisite*, to the SEC's claims for civil monetary penalties.  Indeed, the SEC seeks

monetary penalties under Section 20(d) of the Securities Act, Section 21(d)(3) of the

Exchange Act, and Section 209(e) of the Advisers Act.  In order to obtain the maximum,

---

[4] The grounds for excluding expert testimony in *SEC v. Tourre*, which Defendants cite, are not present here.  In *Tourre*, the court held that the expert's lack of "education, expertise, or experience" in the specialized filed of collateralized debt obligations precluded his qualification as an expert on the subject.  2013 U.S. Dist. LEXIS 87211, *17-19 (S.D.N.Y June 18, 2013).  Unlike in *Tourre*, Mr. Mayer has personal experience in the areas on which he opines, including personally performing due diligence and serving as a consultant for asset based lenders.

"third tier" penalties under these statutes, the SEC must prove that a defendant's conduct "resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. §§ 77t(d)(2)(c)(II), 78u(d)(3)(B)(iii)(bb), 80b-9(e)(2)(C).  Thus, "the public harm caused by the [defendant's] violations" is relevant to determining whether to impose monetary penalties.  *SEC v. True N. Fin. Corp.*, 2012 U.S. Dist. LEXIS 161044, *139 (D. Minn. Nov. 9, 2012).

For these reasons, Mr. Mayer's opinion regarding the amount of investor losses, like the rest of his opinions in this matter, are plainly relevant to the SEC's claims against Defendants.  Thus, his opinions should not be excluded on relevancy grounds.

## 5.    Mr. Mayer's Testimony is Reliable

Expert testimony is admissible if it is "based upon sufficient facts or data" and "the product of reliable principles and methods," which have been applied "reliably" to the facts of the case. *Icon Health & Fitness,* 2011 U.S. Dist. LEXIS 64770 at *20 (citing Fed. R. Evid. 702).  "Courts analyze reliability from a flexible standpoint, examining the particular facts of each individual case." *Ebm-papst Inc. v. AEIOMed, Inc.*, 2010 U.S. Dist. LEXIS 121052, *21 (D. Minn. Nov. 15, 2010) (citing *Kumho*, 526 U.S. at 150).  In regards to reliability, the Eighth Circuit holds that, as "a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination.  Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." *Bonner*, 259 F.3d at 929-30; *see also Blandin Paper Co.*, 2004 U.S. Dist. LEXIS 17550 at *15 (expert

testimony admissible even though it had not been tested, had not been subjected to peer review, and had an unknown "potential rate of error").[5]

For cases such as this one, involving non-scientific expert opinions, the Supreme Court holds that "the relevant reliability concerns may focus upon personal knowledge or experience." *Kuhmo*, 526 U.S. at 150.  Thus, an expert may appropriately testify to "common practice and knowledge" in the expert's industry or field of expertise.  *Finke*, 596 F. Supp. 2d at 1264.  Indeed, in "certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony."  Fed. R. Evid. 702 Advisory Committee's Notes; *U.S. v. Vesey*, 338 F.3d 913, 917 (8th Cir. 2003) (admitting testimony of expert who "had read transcripts of the preliminary hearings and reviewed documents that related to the events that gave rise to the indictment" and "thus had sufficient factual support to be admissible under Rule 702.").

For instance, in securities cases, an expert's reliance on GAAP or "other industry standards constitutes the type of non-scientific, but admissible, expert methodology envisioned in *Kumho*."  *SEC v. Johnson*, 525 F. Supp. 2d at 77; *see also Bilzerian*, 926 F.2d at 1295 ("testimony concerning the ordinary practices in the securities industry may be received to enable the jury to evaluate a defendant's conduct against the standards of accepted practice.").  In the face of the same *Daubert* arguments advanced by

---

[5] Defendants try to undermine the sources relied upon by Mr. Mayer – such as manuals published by GE Capital and the Office of the Comptroller of the Currency – because he secured copies of those materials through the Internet.  By this logic, attorneys would be faulted for performing legal research on Westlaw or reading the Local Rules on the Court's website.  Defendants make no showing that Mr. Mayer's sources are not authoritative.  Even if they could make such a showing, that would impact Mr. Mayer's credibility, not the admissibility of his opinions.

Defendants, courts have admitted expert testimony on the subject of hedge fund due diligence.  *See Pension Comm. of the Univ. of Montreal v. Banc of Am. Secs., LLC.*, 691 F. Supp. 2d 448, 466-67 (S.D.N.Y. 2010).  In that case, the court allowed an expert to intertwine factual narrative with opinion testimony, "which he must do to justify his description of Plaintiffs' conduct."  *Id.* at 467; *see also Island Intellectual Prop. LLC v. Deutsche Bank AG*, 2012 U.S. Dist. LEXIS 21742, *20 (S.D.N.Y. Feb. 14, 2012) (allowing expert to "list the materials he has reviewed, discuss them briefly, and provide an opinion—based on his banking skills and experience—as to the workings and timing of the First City product").

Defendants criticize Mr. Mayer's opinion as offering a factual narrative of the case.  But Rule 26(a)(2)(B) requires an expert to set forth the evidence and bases supporting his opinions.  Mr. Mayer's report does just that, providing nearly 400 citations in support of his opinions.[6]  In essence, Defendants are criticizing Mr. Mayer for being thorough.  Had it been the other way, and Mr. Mayer excluded the factual bases for his opinions, Defendants would have undoubtedly sought to preclude his testimony on that ground.  Rather than providing mere narrative, Mayer's opinion sets forth his opinions and the bases supporting his positions.  He studied the evidence.  He considered the

---

[6] The fact that Mr. Mayer's opinion is based on a methodology comparing Quan's conduct to industry practice and is replete with citations to authoritative sources differentiates this case from the court's reasons for excluding *a portion* of his testimony in *Sys. Dev. Integration, LLC v. Computer Sciences Corp.*, 886 F. Supp. 2d. 873, 879 (N.D. Ill. 2012).  In that case, the court was concerned that Mr. Mayer's opinion did not provide authority or bases for certain damages calculations.  *Id.*  Here, Defendants cannot credibly claim that Mr. Mayer's opinion is unsupported by authority.  Nor do they offer any authority of their own to challenge the basic methodology employed by Mr. Mayer – comparing Quan's conduct to typical industry practices.

evidence in light of his experience and training, industry practices, and the reasonable expectations of investors. He compared Quan's conduct to industry practices and standards. And through that process he reached his conclusions.

### 6.      The Non-Retained Experts

The SEC has identified 13 witnesses as both fact witnesses and non-retained experts. Nine of those witnesses are professional money managers, and the other four are auditors affiliated with Ernst & Young Bahamas, who performed the 2007 audit of the Quan Funds (*see* Dkt. # 190). By reason of education and experience, these witnesses are all experts. A typical example of these witnesses is Jeffrey Marshall. Mr. Marshall received a degree in finance from Bentley College and is a Chartered Financial Analyst. (Ex. 3, Dep. of Jeffrey Marshall, Tr. at 8:22-9:19.) He also holds Series 7 and Series 63 securities licenses. (*Id.* at 9:20-10:5.) Mr. Marshall has seventeen years' experience in the financial services industry and is currently employed as the managing director of a large investment advisory firm. (*Id.* at 10:6-13:17.) He invested with Quan on behalf of several clients. (*Id.* at 21:1-23:12; 30:6-15; 32:13-33:10; 53:1-16.)

Typical of the disclosures made by the SEC for the money managers was that for Mr. Marshall:

> **Jeffrey Marshall**. . . . The SEC intends to call Mr. Marshall to provide testimony as to the facts of the case. The SEC has not asked Mr. Marshall to form any opinions. Although Mr. Marshall will be called as a fact witness, because of his education and professional experience, some of his testimony may be admissible under Fed. R. Evid. 702, 703 or 705. The subject matters as to which Mr. Marshall is expected to testify are the witness's background; private placement memoranda, marketing materials, newsletters, account statements, and other writings distributed by Marlon Quan and his agents; presentations, conversations, correspondence,

including emails, and other communications and interaction with Marlon Quan and his agents; and the witness's investment in the hedge funds managed by Marlon Quan; the operation of short-term commercial financing transactions; and private investment fund operations, policies, procedures, and industry standards.

(Ex. 4, Plaintiff's Expert Disclosures, at 5-6.)

With regard to the Bahamian auditors, the SEC disclosed:

**Jihanne Lizza Hosmillio, Tiffany Norris, Gabriel Tabamo and Michele Thompson**. . . . The SEC may call these witnesses to provide testimony as to the facts of the case. The SEC has not asked them to form any opinions. Although they may be called as fact witnesses, because of their education and professional experience, some of their testimony may be admissible under Fed. R. Evid. 702, 703 or 705. The subject matters as to which these witnesses are expected to testify are the witness's background, Ernst & Young Bahamas' communications with Marlon Quan and his employees and agents regarding the 2007 audit; Information Quan and his employees provided Ernst & Young Bahamas during the 2007 audit, regarding Petters notes that were late or in default; Information Quan and his employees provided Ernst & Young Bahamas during the 2007 audit regarding interest payments to investors in SCAF and SCAF Ltd., including the source of such payments; Information Quan and his employees provided Ernst & Young Bahamas during the 2007 audit, regarding the status of the cash collateral account; Information Quan and his employees provided Ernst & Young Bahamas regarding the February 29, 2008 Forbearance Agreement and/or its substantive content; Information Quan and his employees provided Ernst & Young Bahamas during the 2007 audit, regarding the lockbox account; Information Quan and his employees provided Ernst & Young Bahamas during the 2007 audit, regarding due diligence performed by Quan and his employees; Documents and other information relied on by Ernst & Young Bahamas to render its 2007 audit report issued to Acorn, SCAF, and/or SCAF, Ltd.; Ernst & Young's auditing policies and procedures; and industry standards and best practices for third-party audits.

(*Id. at* 6-7.)

These disclosures are the most the SEC can provide.  The SEC has not retained, or requested, any of these witnesses to form opinions about the issues in dispute in this case.  Unlike Mr. Mayer, there are no formal opinions the SEC expects these witnesses to offer.  Rather, the SEC intends to ask them about their communications and interactions with Quan and the other Defendants.  It is easily foreseeable that included within the witnesses' testimony will be matters such as their:  (a) understanding of certain facts, (b) expectations based on Quan's communications to them, (d) explanations for their understandings and expectations, and (d) reasons for acting as they did.  Testimony such as this, from witnesses such as these – based in part on their knowledge of hedge funds and asset based lending – will arguably constitute expert opinion testimony; but to the extent the testimony contains expert matter, that expert matter will be embedded in and incidental to the witnesses' fact testimony.  As can be seen from the quoted disclosures above, the SEC has given full disclosure of the topics about which it expects to question the non-retained experts.  The Defendants have had full opportunity to depose, and in fact did depose or interview many of, the U.S. based witnesses, during either fact or expert discovery.[7]

The SEC's purpose in disclosing the witnesses as non-retained experts was to provide as much transparency as possible through discovery.  Now Defendants want to punish the SEC for its transparency.  They also want to have it both ways.  Indeed, one of

---

[7] To date, the SEC has not secured the depositions of the Bahamian auditors pursuant to the letter rogatory issued by the Court.  Thus, neither the SEC nor the Defendants have questioned them.  As of now, it appears unlikely that the SEC will succeed in arranging for depositions of those witnesses.

Defendants' defenses is that Quan's investors, including non-retained experts identified

by the SEC, are "sophisticated."  Thus, Defendants simultaneously want to demonstrate

the expertise of Quan's investors, yet preclude the SEC from eliciting testimony

regarding the subject of their expertise.  The Court should not countenance this tactic.

Moreover, the SEC's disclosures satisfy the requirements of Rule 26.  According

to the 2010 Advisory Committee Notes on Rule 26(a)(2)(C), "[c]ourts must take care

against requiring undue detail, keeping in mind that these witnesses have not been

specially retained and may not be as responsive to counsel as those who have."  Courts

have followed this guidance and held that the disclosure requirements under Rule

26(a)(2)(C) are more lenient than those for retained expert witnesses.  *See, e.g., Saline*

*River Properties, LLC v. Johnson Controls, Inc.*, 2011 U.S. Dist. LEXIS 139238, *29

(E.D. Mich. Dec. 5, 2011) (noting that "Rule 26(a)(2)(C)'s notice provision requirements

are liberal."); *see also, e.g., Kristensen v. Spotnitz*,  2011 U.S. Dist. LEXIS 59740, *7

(W.D. Va. June 3, 2011) (finding proper disclosure even though the detail provided to the

opponent "is not great").

Courts also tend to measure disclosures for certain types of non-retained experts,

particularly medical professionals, to a higher standard than for non-medical experts such

as the thirteen witnesses Defendants seek to exclude.  Although Rule 26(a)(2)(C) applies

to all non-retained expert witnesses, the 2010 Advisory Committee Notes indicate that

the rule was specifically designed with "physicians or other health care professionals" in

mind.  Courts have been stringent when evaluating Rule 26(a)(2)(C) disclosures

pertaining to non-retained expert witnesses from the medical field.  *See e.g., Anderson v.*

*Bristol, Inc*., 2013 U.S. Dist. LEXIS 48708, *46 (S.D. Iowa Mar. 25, 2013).  However, courts have accepted disclosures for non-retained expert witnesses from outside the medical field when they succinctly state the subject matter the witness plans to testify about.  *See Chesney v. Tenn. Valley Auth.,* 2011 U.S. Dist. LEXIS 68274 (E.D. Tenn. June 21, 2011).

The cases Defendants rely on are distinguishable from the situation in this case. Defendants cite three cases interpreting Rule 26(a)(2)(C).  (Dkt. 293 at 30-31).  However, each of these cases deals with disclosures involving physicians or medical professionals. Since medical professionals require stricter disclosure under Rule 26(a)(2)(C), those cases are inapposite.  Because the SEC has disclosed the subject matter and summary of the witnesses' anticipated testimony, the SEC has provided adequate disclosure under the rule.  Moreover, because Defendants either have deposed or had the opportunity to depose those witnesses, their testimony should not be precluded.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Defendants' motion should be denied in its entirety.

Respectfully submitted,

Dated:  July 11, 2013            /s/ John E. Birkenheier    _

John E. Birkenheier (IL #6270993)
Charles J. Kerstetter (PA #67088)
Sally J. Hewitt (IL #6193997)
Timothy S. Leiman (IL #6270153)
Attorneys for Plaintiff
U.S. Securities & Exchange Commission
Chicago Regional Office
175 West Jackson Blvd., Suite 900
Chicago, Illinois 60604
T. (312) 353-7390
F. (312) 353-7398
birkenheierj@sec.gov
kerstetterc@sec.gov
hewitts@sec.gov
leimant@sec.gov

James Alexander
Assistant United States Attorney
District of Minnesota
600 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN
T. 612-664-5600
F. 612-664-5788
Local Counsel